[No. 1582-1.   Division One.   November 12, 1973.]

Denis Thompson, *Appellant,* v. Merry Thompson, *Respondent.*

*Newman & Bradshaw, Inc., P.S.,* and *Joel E. Bradshaw,* for appellant.

*Jay Nuxoll,* for respondent.

HOROWITZ, J.—The controlling question here is the sufficiency of evidence received in a divorce modification proceeding to support findings, conclusions and decree terminating a noncustodial father's court-conferred visitation rights with respect to the approximately 5-year-old daughter of the divorced parents.

Plaintiff father, on October 13, 1971, sued defendant mother to obtain a modification of the June 4, 1970, divorce decree so as to remove the child from the mother's custody and award it to the father. The mother, in January 1972, moved to terminate the father's visitation rights previously awarded him by the divorce decree. On March 31, 1972, the court entered an order awarding sole custody of the child to the mother and providing that plaintiff should have "no visitation rights whatever." The order also relieved the father of all further liability for child support as of January 28, 1972, fixed the amounts owing under the divorce decree by the father to the mother, and in all other respects confirmed the previously entered divorce decree. The court refused to award attorney's fees to the mother, finding no need therefor. Plaintiff appeals. He assigns error to certain findings and conclusions, and the denial of his motion for reconsideration and new trial.

We need not review the evidence in detail. It is in sharp conflict. Much of it is concerned with a visitation incident on August 8, 1971, when the father, over the mother's objection, returned their child to the mother at 8 p.m. instead of at noon as required by the visitation provisions of the divorce decree. According to the mother's version of the case, when the child was returned she was screaming. When the mother undressed the child to bathe her, she found a num-

ber of marks on the child's body described by the mother as bruises and, by another witness, as "hickeys" or suction marks. The mother in effect testified that the incident was but the latest in a pattern of unsatisfactory visits the child had had with her father commencing even prior to the divorce decree. The mother could see no advantages in the child's seeing her father. In so stating, in response to a question by Mr. Bradshaw, she further testified:

She comes home. She's upset. It takes me days to calm her down. She is, she is unhappy and depressed. She's very, as far as I can see, very astute when she's with me, anyway, very normal, happy little girl. And perhaps I'm prejudiced. I think she's a very clever little girl. She is very smart. She is bright. And I see just the reverse when she comes from Mr. Thompson's home. She's unhappy. She cries. And it's not to be with him again. She's just depressed. Because I asked her if she wanted to go, you know, does she miss him. She said no.

Q When did you ask her this?

A On one visit in particular. She was very, very unhappy and I said, "What's the matter, hon?" Most of the time when she came back I spent three days just holding her and rocking her, she'd be so upset. She does not like her father and I have never mentioned anything to her. We don't discuss him. And I have never downgraded him. In fact, I don't want her to know what he is like. I would never say anything bad about him to her in front of her. Never.

The father denied he had ever abused or maltreated his daughter on any of the visits, or otherwise. According to the testimony in his case, when the child was picked up she was generally shy and withdrawn, but later acted normally and played happily during the period of visitation. He denied knowledge of the existence or cause of the marks on the child's body. He was critical of the mother's interference with his court-conferred child visitation rights and complained bitterly over the mother's efforts to prevent him from seeing his child. On appeal, he denies there is any "affirmative showing that [he] is solely responsible for some detrimental effect on his/or her child."

■ Credibility of witnesses being for the trial court, the court was empowered and compelled to choose between conflicting versions of the critical facts. *Rognrust v. Seto,* 2 Wn. App. 215, 467 P.2d 204 (1970). He chose to believe the wife's version. The court accordingly found the father, on August 8, 1971, returned his child later than the normal hour and "in an abused, maltreated and distressed condition, as evidenced by Exhibits #3, 4 and 5 . . . taken . . . after the child returned after she had been bathed and consoled by her mother." Finding No. 6. He further found that Mr. Woolworth, the mother's second husband, had "provided a stable home life for the child, . . . who now refers to him as her father, . . . is happy, and there is indication that she will continue to improve and grow into a healthy, normal, bright, happy child." Finding No. 9. He then found that Mr. Woolworth "has indicated that he is able and willing to assume full responsibility for the child without necessity for additional support from the plaintiff, other than payment of the arrearages." Finding No. 10. He then entered the following critical finding No. 11:

> It is in the best interest of the child, NOELLEN THOMPSON, herself, to prevent further physical and mental trauma to her because of abuse on her visits with her father to grant sole and exclusive custody to the mother, MERRY THOMPSON WOOLWORTH, and to deny visitation rights to the father, DENIS THOMPSON.

■ Testimony supporting the wife's version of the facts is substantial evidence and is sufficient to support the court's findings. The court adhered to his findings and conclusions when, in denying the plaintiff's motion for reconsideration he stated:

> While the evidence was conflicting at trial, I accept that which showed that the little girl was abused on her visits with her father and I am convinced that continuation of visitation rights would only result in further physical and mental trauma for her. I still consider it necessary for her well being to deprive the father of all parental rights.

.The findings are binding upon us and we may not substitute our findings for those of the trial court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The father contends, in effect, the findings are inconsistent in certain respects with the court's oral opinion delivered at the conclusion of the trial. The court's opinion was critical of both parents, stating that each was using the child as a means of punishing the other. He noted the mother had frequently defied the order of the court concerning the father's visitation rights. He stated he was "sorely tempted to take her away from both parents" in order to get her "away from this tug-of-war thing." He then stated he could not permit this tug-of-war between the parents to continue, and that

> solely on that basis, not because of greater merit on the part of the mother, but because I feel that this child, a girl, in what hopefully is a stable home at this time, can continue to improve and reach a normal adulthood.

■ It is proper to resort to the court's oral opinion when the opinion is consistent with the findings for the purpose of better understanding them. Nevertheless, once understood, findings, whether consistent or inconsistent with that opinion, supersede it and such an opinion may not be used as a substitute for findings entered or to impair their full force and effect. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *Rutter v. Rutter,* 59 Wn.2d 781, 370 P.2d 862 (1962).

■ The court, without expressly so stating in its findings, apparently held the father was guilty of intentionally inflicting physical and mental abuse upon his child as a means of punishing his former wife. He therefore awarded exclusive custody to the mother, denied the father any further visitation rights, and relieved him of his child support obligations. On the father's motion for reconsideration, as pointed out, the court stated he still considered it necessary "for her well being to deprive the father of all parental rights." It is not altogether clear whether the language

he used was meant to describe only what is provided in the court's findings, conclusions and decree, or whether the court also meant the findings, conclusions and decree to have the effect of dispensing with the necessity of obtaining the father's consent to any later child adoption proceedings. RCW 26.32.040(2). The father treats the action of the trial court as providing for permanent child deprivation. If the father is right, it is arguable that RCW 26.32.040(2) applies. On the other hand, the wife, in defending the trial court's order, states in her brief "the order of modification does not go that far." The wife concedes that the father, by utilizing RCW 26.08.170, could later petition for a modification both as to custody and child support.

No good purpose will be served by resorting to speculation to resolve the conflicting views of the parties on the very important matter discussed. It is in the best interests of the child and her parents that the ambiguity be settled now rather than to await later litigation. Trial and appellate courts have traditionally shown a special concern for the protection of the rights of children affected by their decrees. We believe that by the disposition of the appeal we later make the trial court should have an opportunity to remove any ambiguity there may be with respect to its intentions and, if necessary, to expressly deal with the desirability of avoiding the possible application of RCW 26.32.040(2) by providing for at least the payment of nominal child support by the father.

We are mindful that no assignment of error is expressly directed to clearing up the ambiguity discussed resulting from the conclusion of law terminating the father's child support obligation. However, to leave the trial court's order in its present status, with the parties disagreeing as to what the court intended, would be most unfortunate. The situation calls for the application of the "fundamental justice" exception. See Peoples Nat'l Bank v. Peterson, 82 Wn.2d 822, 514 P.2d 159 (1973); Siegler v. Kuhlman, 81 Wn.2d 448, 502 P.2d 1181 (1972); Maynard Inv. Co. v. McCann, 77 Wn.2d 616, 465 P.2d 657 (1970).

The father's rights to custody and his duty to support are not necessarily forever gone under any and all circumstances. The wife concedes that should material changes occur in the conditions responsible for the decree appealed from, changes in custody and support provisions may be required pursuant to RCW 26.08.170. *See, e.g., Morin v. Morin,* 66 Wash. 312, 119 P. 745 (1911); *In re Neff,* 20 Wash. 652, 56 P. 383 (1899). *See Sherwood v. Sherwood,* 48 Wn.2d 128, 291 P.2d 674 (1955); H. Clark, *Domestic Relations* § 17.3, at 578; § 17.5, at 594; § 17.7 (1968).

There are cases in which a parent has been put to unnecessary expense and difficulty in locating his child following the entry of the divorce decree, especially if the child is taken out of the jurisdiction. It may well be necessary and proper for him to continue to know the whereabouts of his child (*see, e.g., In re Penner,* 161 Wash. 479, 297 P. 757 (1931); *McClain v. McClain,* 115 Wash. 237, 197 P. 5, 202 P. 173 (1921)), especially if there is reason to believe from past experience that such knowledge will be withheld. In the instant case, the wife withheld such knowledge and hid the child from the father by removing herself and the child to Vancouver, B.C. Finding No. 8. As a result, the father has encountered unnecessary difficulty and expense. He has been compelled to resort to litigation to locate his daughter so that he might exercise his court-conferred visitation rights. The father's knowledge of his child's whereabouts is not to be used for the purpose of permitting the father to interfere with or impair the mother's court-conferred custodial rights. The knowledge may well be required for the purpose of protecting the child's changing needs during her minority should it develop that those needs cannot or are not being met by the child's mother and her husband. We therefore further believe that in our disposition of the appeal later made, the court should have an opportunity to provide such protection. *See generally* 27 Am. Jur. 2d *Equity* §§ 248, 249 (1966); 67 C.J.S. *Parent and Child* § 13(2) (1950).

Defendant mother asks for an attorney's fee allow-

ance for legal services on appeal. The trial court denied attorney's fees to either party for the proceedings below, finding that each party was capable of paying his or her own attorney's fees. Finding No. 12. No error has been assigned to this finding. There is no showing that financial need has arisen since entry of the decree so as to authorize the award of attorney's fees to the defendant mother. In the absence of a showing of need, the mother's motion must be denied. *See Coons v. Coons,* 6 Wn. App. 123, 491 P.2d 1333 (1971).

The decree appealed from is affirmed, but without prejudice to the power of the trial court on remand and after hearing (1) to direct the mother to keep the father informed concerning the residence of the daughter; (2) to fix a hearing date sufficiently far in the future to permit a meaningful review of the child's then needs and any necessary modification of the decree, including provision for support and custody; and (3) to fix at least a nominal sum for child support to be paid by the father until further notice. Each party shall bear his or her own costs on appeal.

Affirmed as modified.

SWANSON, C.J., and WILLIAMS, J., concur.