[No. 3884–1.   Division One.   July 18, 1977.]

*In the Matter of the Marriage of* HEIDI HARSHMAN, *Respondent, and* WILLIS HARSHMAN, *Appellant.*

*Inslee, Best, Chapin & Doezie, P.S.,* and *Evan E. Inslee,* for appellant.

*John M. Meyer* and *Warren J. Gilbert,* for respondent.

CALLOW, J.—Willis Harshman appeals and Heidi Harshman cross–appeals from a decree of dissolution.

The husband raises the following issues: (1) Can a motion for reconsideration pursuant to CR 59 be made more than 5 days after the oral decision? (2) What was the community interest oŕ right of reimbursement in a 29–acre tract of real property purchased by the husband prior to marriage? (3) Did the trial court abuse its discretion in (a) awarding maintenance pending appeal, (b) not providing that the payment of maintenance be offset against the property awarded the wife, (c) failing˗ to terminate the maintenance ·pending appeal upon the wife's remarriage, and (d) awarding the wife $450 attorney's fees? The wife raises the following issues in her cross–appeal: (1) Was the property distribution just and equitable? (2) Did the trial court err in only awarding support in the amount of $200 per month for each of three children? (3) Did the trial court err in terminating maintenance pending appeal?

### SUPERIOR COURT CIVIL RULE 59

The first issue raised in the husband's appeal is whether a motion for reconsideration served more than 5 days after the court's *oral* decision is timely. CR 59(b) provides:

> **(b) Time for Motion.** A motion for reconsideration . . . may be served and filed after the verdict is received in a case tried by a jury or after the oral or written decision in a case tried to the court. *No motion for reconsideration . . . may be served more than 5 days after the entry of the verdict or oral or written decision.*

(Italics ours.) Under CR 6(b), the time for serving a motion made pursuant to CR 59(b) may not be extended. The husband contends that, under CR 59(b) and CR 6(b), a motion for reconsideration cannot be made more than 5 days after the court's oral decision. We disagree.

In 4 L. Orland, Wash. Prac. 383 (1968), the author states that CR 59 is

> of statutory origin. The last statutory version appeared in RCWA 4.76.020, the language of which was adopted verbatim in the promulgation of Rule 16, General Rules of the Superior Courts, 34A Wash.2d 117, except that there was added thereto the ninth ground relating to substantial justice, and the last two paragraphs of the rule.

Prior to the promulgation of CR 59(b), RCW 4.76.060 provided that:

> The party moving for a new trial must, within . . . *two days after notice in writing of the decision of the court or referee,* if the action was tried without a jury, filed with the clerk, and serve upon the adverse party, his motion for a new trial, designating the grounds upon which it will be made.

(Italics ours.) *Canzler v. Mammoliti,* 40 Wn.2d 631, 632, 245 P.2d 215 (1952), discusses the attempt to clarify RCW 4.76.060 by the adoption of Rule of Superior Court 16, quoting it as follows:

> "The time within which a motion for a new trial shall be served and filed in a cause tried by the court without a jury shall not begin to run until the findings of fact and conclusions of law therein shall have been signed by the court."

Thus, prior to the adoption of CR 59(b), effective July 1, 1967, a motion for a new trial was timely if filed within 2 days after the findings of fact and conclusions of law were signed by the court. *See Clark v. Ellington,* 86 Wash. 110, 149 P. 350 (1915).

In adopting CR 59, the time requirement was extended from 2 to 5 days, and it was provided that the motion *may* not be served more than 5 days after the entry

of the "oral or written decision." The language of this rule is in the disjunctive, and, accordingly, a party may serve a motion for reconsideration after the oral decision *or* after the written decision. Although, in many instances, the trial court will render an oral decision prior to the entry of a written decision, *i.e.,* findings of fact, conclusions of law, or written order, the rule is that

> a trial judge's oral decision is no more than a verbal expression of his informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment.

*Ferree v. Doric Co.,* 62 Wn.2d 561, 566–67, 383 P.2d 900 (1963). *See State v. Johnson,* 12 Wn. App. 40, 527 P.2d 1324 (1974); *Thompson v. Thompson,* 9 Wn. App. 930, 934, 515 P.2d 1004 (1973). The 5–day time requirement stated in CR 59(b) is intended to set the maximum time within which a motion for reconsideration and/or a new trial must be made. *Cf.* Fed. R. Civ. P. 59(b); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2812 (1973). A party may serve a motion for reconsideration at any time following an oral decision so long as the motion is not made more than 5 days after the entry of the written decision. Any other interpretation of CR 59(b) would conflict with the policy of permitting the trial court to change its oral decision prior to the written decision.

This interpretation of CR 59(b) is consistent with *Seidler v. Hansen,* 14 Wn. App. 915, 547 P.2d 917 (1976), where a motion for reconsideration was filed and heard 2 years after the court's oral decision. In *Seidler* the plaintiff assigned as error the trial court's reopening of the case to consider additional evidence. It was stated in *Seidler v. Hansen, supra* at 917–18, that "a trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law, and judgment", and

that "it was proper for the trial judge and within his discretion to reopen the case". *Seidler* is, however, inconsistent with *In re Cole,* 15 Wn. App. 460, 550 P.2d 23 (1976), which appears to state that a motion for a new trial served 16 days after the court's oral decision of permanent deprivation was not timely.[1] We adopt the reasoning of *Seidler v. Hansen, supra,* and hold that in a case tried to the court (a) a motion for reconsideration and/or a new trial brought pursuant to CR 59(b) is timely unless it is served and filed more than 5 days after the written decision, and (b) in those instances where written findings of fact and conclusions of law are required to be entered by CR 52, the losing party may serve and file a motion for reconsideration of the oral decision at any time until 5 days have passed following the entry of the written findings and conclusions.

Here, the trial court made its oral decision on February 20, 1975. The wife filed and served a motion for reconsideration on March 27, 1975, which was prior to the written decision. Since the motion was not made more than 5 days after the written decision, it was timely.

COMMUNITY OR SEPARATE INTEREST—MORTGAGE RULE

The next issue raised in the husband's appeal concerns the community's interest or right of reimbursement in a 29–acre parcel of farmland known as the Nevins property. This property was purchased by the husband in 1965, 4 years prior to the parties' marriage, and was used in the husband's farming business. The purchase price was $32,000. The husband paid $2,500 down, assumed an $11,000 mortgage, and entered into a real estate contract

---

[1]*In re Cole,* 15 Wn. App. 460, 550 P.2d 23 (1976), was concerned with the jurisdictional time requirements under CAROA 57 for the filing of writs of certiorari. *Cole* held that the court had no jurisdiction to hear the writ because it was not timely filed within 15 days of the written order of permanent deprivation. The *Cole* case also stated that the motion for new trial which was served 16 days after the court's oral decision, but which was not argued prior to the entry of judgment, was abandoned. The apparent statement in *Cole* that a motion for a new trial is not timely if made 16 days after an oral decision of permanent deprivation, is overbroad and inapplicable to circumstances falling within the requirements of CR 52.

for the balance of $18,500. During the marriage, approximately $13,000 was paid on the principal and interest on the mortgage and real estate contract. At the time of dissolution, the Nevins property had a market value of $55,000, with a balance owing of $10,600.

The trial court found that the husband's separate property interest in the Nevins property was valued at $17,425. In another finding of fact, the court stated concerning the community interest:

> The parties accumulated considerable community property as follows:
> 1. TWENTY–NINE ACRE NEVINS TRACT
> Value: $55,000.00
> Less Mortgage 10,600.00
>                         $44,600.00 [sic]
> Community Interest 13,000/21,400 = $26,975.00

These findings indicate that the trial court determined the community's interest in the Nevins property by the ratio of the community funds expended on the property during marriage ($13,000) to the total expenditure on the property since its purchase ($21,400). The husband's separate interest was similarly calculated by the ratio of the separate funds expended prior to marriage ($8,400) to the total expended on the property since its purchase ($21,400). The net value of the property—$44,600 (*sic*)—was multiplied by these ratios in determining the community interest of $26,975, and the separate interest of $17,425.

The husband contends that the trial court improperly used the ratio of the community investment to the total investment in determining the community interest in the Nevins property. We agree.

The rule is that the character of property, as community or separate, is determined as of the date of acquisition. *Baker v. Baker*, 80 Wn.2d 736, 498 P.2d 315 (1972); *In re Estate of Madsen,* 48 Wn.2d 675, 296 P.2d 518 (1956); *In re Estate of Binge,* 5 Wn.2d 446, 105 P.2d 689 (1940); *Pollock v. Pollock,* 7 Wn. App. 394, 499 P.2d 231 (1972); Cross, *The Community Property Law in Washington,* 49 Wash. L.

Rev. 729, 755 (1974). Since the husband purchased the Nevins property in 1965, 4 years prior to his marriage, it was his separate property.

Although the Nevins property must be characterized as the husband's separate property, the community has a right of reimbursement protected by an equitable lien against the property to the extent that community funds were used to discharge the principal on the mortgage:

> In a mortgage financing situation, where the buyer acquires title at the outset in exchange for a cash payment and an obligation to pay the remainder of the purchase price, the fractional share of the ownership represented by the cash payment will be owned as the cash was owned, and the character of the balance will be determined by the character of the credit pledged to secure the funds to pay the seller, or to secure payment to him. It does not matter that funds of a different character are subsequently used to pay the obligation; the character of the asset is determined by the character of the cash and of the obligation at the time legal title and ownership is obtained.

(Footnotes omitted.) Cross, *supra* at 755–56. *See Merkel v. Merkel,* 39 Wn.2d 102, 234 P.2d 857 (1951); *Conley v. Moe,* 7 Wn.2d 355, 110 P.2d 172, 133 A.L.R. 1089 (1941).

■ The record indicates, however, that in addition to the mortgage of $11,000, the husband entered into a real estate contract for $18,500 in 1965. In cases of real estate contract financing, the courts have stated the mortgage rule but applied an apportionment formula, *i.e.,* the community or separate interest in the property is determined by the percentage that each contributed to the purchase price. *See, e.g., In re Estate of Binge, supra.* Concerning this confusion, Professor Cross states:

> The author thus believes it is desirable that there be clear adoption of the mortgage rule in installment acquisitions: the ownership character of an asset acquired in performance of a contractual purchase obligation should be the same as the character of the initial obligation. This rule has the attractiveness of certainty and would permit similar resolution of ownership questions in credit

acquisitions, rather than variations based on the particular sort of credit transactions involved. When a different result, *i.e.*, an apportionment of ownership, is desired by the spouses, present rules permit them to change the character by agreement. No more flexibility is needed even though there may be a rationale for automatic apportionment in some situations. If necessary, payments from funds not owned by the original obligor(s) can be adequately protected through the "equitable lien" approach.

(Footnotes omitted.) Cross, *supra* at 762. We agree.

We find that the trial court erred in applying an apportionment formula to determine the community's interest or right of reimbursement in the Nevins property. The concept expressed in *In re Estate of Kuhn,* 132 Wash. 678, 233 P. 293 (1925), that a contract vendee has no equitable interest in the land at the time of the acquisition of the obligation to pay for it, has been discarded. The controversy over this aspect of the relationship between vendor and vendee found in *Ashford v. Reese,* 132 Wash. 649, 233 P. 29 (1925), *Holt Mfg. Co. v. Jaussaud,* 132 Wash. 667, 233 P. 35, 38 A.L.R. 1312 (1925), and *In re Estate of Kuhn, supra,* has been laid to rest. *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958); *Meltzer v. Wendell–West,* 7 Wn. App. 90, 497 P.2d 1348 (1972). A contract vendee gains an equitable ownership in the property at the time of its acquisition. Here, the husband acquired an equitable interest in the Nevins land at the time he entered into the real estate contract in 1965, this interest was his separate property, and the community has a right of reimbursement and equitable lien against the property for the community funds paid on the principal[2] of the mortgage and on the real estate contract. *Fritch v.*

---

[2]In *Merkel v. Merkel, supra* at 116, the court refers to the "interest, tax, and upkeep payments made by the community" as representing "no more than reasonable rental for the use of the land". The lien is *equitable* in nature. The right to reimbursement may be diminished if the contributor realized a benefit from the use of the asset. *See* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, at 733–79 (1974).

*Fritch,* 53 Wn.2d 496, 335 P.2d 43 (1959); *Merkel v. Merkel,* 39 Wn.2d 102, 234 P.2d 857 (1951); *In re Estate of Dougherty,* 27 Wn.2d 11, 176 P.2d 335 (1947); *Porter v. MacLeod,* 15 Wn. App. 650, 553 P.2d 117 (1976); Continuing Legal Educ. Comm., Wash. State Bar Ass'n, *Washington Community Property Deskbook* §§ 7.3, 19.4, 19.14 (1977).

### INCREASES IN VALUE

■ A further issue arises concerning the increase in the value of the Nevins property from $32,000 in 1965 to $55,000 at the time of dissolution. All rents, issues, and profits of the husband's separate property, if traceable, continue to be the husband's separate property. RCW 26.16.010, .020; *Baker v. Baker, supra.* However,

> where the separate property in question is *real estate or an unincorporated business* with which personal services ostensibly belonging to the community have been combined, the rule is that all the income or increase will be considered as community property *in the absence of a contemporaneous segregation of the income between the community and the separate estates.*

*Hamlin v. Merlino,* 44 Wn.2d 851, 858, 272 P.2d 125 (1954). *See In re Estate of Smith,* 73 Wn.2d 629, 440 P.2d 179 (1968); *In re Estate of Witte,* 21 Wn.2d 112, 150 P.2d 595 (1944); *Pollock v. Pollock, supra. Hamlin v. Merlino, supra,* appears to be the genesis of the emphasized statement. We do not agree that contemporaneous segregation is the only way to maintain and prove the separate status of income. As footnoted in King, *The Challenge of Apportionment,* 37 Wash. L. Rev. 483, 493 (1962), this concept was stated as dictum. The presumption may be overcome by clear and satisfactory evidence tracing the property to its origin or source as separate property. An owner of separate property should not be prohibited from proving the source of an increase in value of the separate estate because contemporaneous segregation did not take place if other admissible

evidence is available to surmount the presumption. *See In re Estate of Witte, supra;* Cross, *supra* at 733, 769–71; Continuing Legal Educ. Comm., Wash. State Bar Ass'n, *Washington Community Property Deskbook* § 19.3 (1977). Upon remand, the husband has the burden of establishing that the increase in the value of the property was due to the rents, issues, and profits of the separate estate as opposed to community labor. If the husband is unable to sustain this burden, the entire increase in value is presumed to be community, and the community would be entitled to an equitable lien or right of reimbursement as to the increased value. *See Conley v. Moe, supra;* Continuing Legal Educ. Comm., Wash. State Bar Ass'n, *Washington Community Property Deskbook* § 19.4 (1977).

ORDERS PENDING APPEAL

The husband also challenges various orders entered by the trial court pending appeal. On August 22, 1975, the court ordered the husband to pay the wife support in the amount of $600 per month pending appeal, maintenance of $300 per month, and temporary attorney's fees of $300 in connection with services rendered to obtain child support subsequent to the entry of the judgment. On December 19, 1975, the husband petitioned to vacate or modify the order of maintenance and support pending appeal on the ground that the wife had remarried on November 23, 1975. On January 23, 1976, the trial court ordered that the husband was to continue to pay his wife $200 per month for child support for each of the three children. However, maintenance was reduced to $200 per month, effective January 1, 1976. On March 5, 1976, an order to show cause was entered for the husband's alleged failure to pay support and maintenance which had previously been ordered. The husband retained new counsel, and on March 29, 1976, he filed an affidavit stating that for the month of March he had initially paid $225 for support, but as of the date of the affidavit, he had paid the full $600. He further alleged that, in his opinion, he was not required to pay maintenance

after the wife's remarriage on November 23, 1975. The husband moved for termination of the order requiring him to pay maintenance. On May 19, 1976, the court found that the husband owed maintenance of $400 for the months of January and February of 1976. The trial court also ordered that the husband was no longer required to make maintenance payments as of March 1976. The court denied the husband's motion to apply maintenance to the property ultimately awarded to the wife. The wife was awarded $450 as reasonable attorney's fees.

█ The husband first contends that the trial court erred in awarding maintenance pending appeal. We disagree. The award of maintenance pending appeal is a matter within the sound discretion of the trial court which will not be overturned absent a showing of manifest abuse of that discretion. *Stringfellow v. Stringfellow,* 53 Wn.2d 359, 333 P.2d 936 (1959). The record discloses no manifest abuse of discretion.

The husband also contends that any maintenance awarded the wife should be offset against the property ultimately awarded to her. We find that any offset would be a matter within the discretion of the trial court after considering the property division and the situation of the parties. We find no abuse of discretion from this aspect.

The husband further contends that it was error to require him to pay maintenance subsequent to the wife's remarriage. The original order did not provide that maintenance was to end upon the wife's remarriage. However, RCW 26.09.170 states in part:

> Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party *or the remarriage of the party receiving maintenance.*

(Italics ours.) Although this statute applies to decrees of dissolution, the rationale of the rule is applicable to provisions for maintenance pending appeal. In the absence of a clear expression otherwise, maintenance ordered pending

appeal should end upon the remarriage of the party receiving maintenance. Here, the wife was remarried on November 23, 1975. It was error to require maintenance to be paid to her after that date.

■ Finally, the husband contends that he should not be required to pay $450 to the wife as reasonable attorney's fees. An award of attorney's fees rests within the sound discretion of the trial court, which must balance the needs of the spouse requesting the fees against the ability of the other spouse to pay. *Bowman v. Bowman*, 77 Wn.2d 174, 459 P.2d 787 (1969); *In re Marriage of Nicholson*, 17 Wn. App. 110, 561 P.2d 1116 (1977); *In re Marriage of Melville*, 11 Wn. App. 879, 526 P.2d 1228 (1974); *Cleaver v. Cleaver*, 10 Wn. App. 14, 516 P.2d 508 (1973). However, attorney's fees may also be awarded if the trial court determines "that additional legal services were required because of the intransigence of the appellant." *Eide v. Eide*, 1 Wn. App. 440, 445, 462 P.2d 562 (1969). *See Fleckenstein v. Fleckenstein*, 59 Wn.2d 131, 366 P.2d 688 (1961). Here, the wife was forced to resort to contempt proceedings to enforce maintenance and support. We find no abuse of discretion in awarding her attorney's fees under the circumstances.

In her cross–appeal, the wife initially contends that the property distribution was not just and equitable. Since we have determined that the trial court erred in valuing the community interest in the Nevins property, the wife's contention that the property distribution was not just and equitable should be reconsidered by the trial court upon remand.

■ The wife also argues that the trial court erred in only awarding support in the amount of $200 per month for each of her three children. We disagree. In *Baker v. Baker*, 80 Wn.2d 736, 742–43, 498 P.2d 315 (1972), the court stated concerning support:

It is well established that an award for child support must be fixed on the basis of all the factors which have a reasonable bearing on the future welfare of the children

and the economic circumstances of the parent, including the cost of care, maintenance, and education of the children, the resources, earning capacity and economic prospects of the parents, the age and health of the parties, and their standard of living prior to the divorce.

As said in *In re Marriage of Nicholson, supra* at 120:

The record establishes that the trial court considered all of the relevant factors in awarding child support and that under the circumstances the award was not unreasonable. . . . We will not disturb the child support provisions of the decree.

Finally, the wife's motion for attorney's fees on appeal is denied.

The case is remanded for further proceedings consistent with this opinion. Neither party shall recover costs in this court.

WILLIAMS and ANDERSEN, JJ., concur.

Petition for rehearing denied September 27, 1977.