BOWLING, Justice,
for the Court:
This is another one of those unfortunate child custody cases for which there is no adequate resolution. The cause has been before this Court on two occasions and this opinion takes note of the former record as it is now a part of the records of this Court. The former cause is 376 So.2d 654 in the records of this Court and bears the style, Judith Ann Webb v. James Richard Webb, Jr. That cause was affirmed per curiam on November 14, 1979.
The present cause is an appeal from a decree of the Chancery Court of Lauderdale County modifying the first modification decree of December 19, 1978, in the prior cause. The records reveal that on December 13, 1977, a final decree of divorce was rendered, granting appellant herein, Judith Ann Webb, a divorce from appellee, James Richard Webb, Jr. The grounds for the divorce are not shown in the decree. The record reveals that at the time of the marriage of the parties, Judith Webb had a daughter three months of age. The record *982 is silent as to whether or not this was a daughter by a prior marriage. The record does reveal that when the child was born, Judith was very young. After the marriage appellee adopted the appellant’s daughter and changed her name to Webb.
By the final decree of divorce, Judith Webb was granted the “exclusive care, custody, control and tuition of the minor child of the parties hereto, namely, Pamela Louise Webb, subject to the right of reasonable visitation on the part of James Richard Webb, Jr.” The father was ordered to pay monthly child support payments in the sum of $500.
As hereinbefore stated, there was involved in the former appeal to this Court a petition for modification filed by appellee, James Richard Webb, Jr., on August 1, 1978. It was his contention that the moral actions of appellant were such that it would be in the best interest of the minor child for its custody to be changed from Judith, the natural mother, to Webb, the adoptive father. There was considerable testimony heard by the trial court regarding the actions of both Webb and Judith. We will not discuss that testimony in detail as this Court held by affirming the cause that the chancellor was not manifestly wrong in granting the prayer of the petition for modification and changing the custody of the minor child to Webb with the right of reasonable visitation to Judith.
There were some parts of the testimony that are significant to anyone reading the record in the first modification hearing. It developed that on the same day the original divorce decree was entered, Webb married a seventeen-year-old girl, who was still his wife at the time of the hearing in the present action. This second wife testified in the first cause that she was enrolled as a student at the University of Southern Mississippi but intended to enroll in a college in Meridian where the parties lived. We will not go into detail and discuss the testimony before the chancellor during the first modification hearing, except to say that portions of the written word in the record left something to be desired in finding that he was entirely the innocent party in the whole matter.
After receiving the evidence in the first modification hearing, the chancellor issued his decree modifying the divorce decree so as to give Webb, the adoptive father, the custody, care and control of the minor child, who was eight years of age at that time. This custody was subject to the right of reasonable visitation on the part of Judith. The decree further provided that “Judith Ann Webb be and she is hereby ordered to pay unto James Richard Webb, Jr., a reasonable amount each month for the support of the minor child of the parties hereto.”
On March 26, 1979, approximately three months after the first modification decree, Webb, the adoptive father, filed another modification petition requesting that all visitation rights be taken from Judith, the natural mother, for the alleged reason that Judith’s immoral activities and dates with a married man were detrimental to the welfare of the child. The hearing on the present modification petition was not held until January 8, 1980. During the almost nine-month interval, Judith was evidently having visitation rights with her minor daughter. Judith did not appear at the modification hearing now before this Court, stating that she was “too upset” to come. The principal testimony was given by appel-lee Webb. He had employed detectives, who testified that Judith was in the frequent company of a married man in many different places and different states. Webb testified that the minor child, Pam, was upset when she returned from visiting her mother. Webb further testified that after the former modification decree wherein the chancellor ordered the mother, Judith, to pay “a reasonable sum” toward the child’s support, that he, Webb, decided that a monthly sum of $150 would be proper. Judith, who was then working at a dress shop, paid this sum for several months but stopped paying several months prior to the present hearing. The testimony was undisputed that Judith was not working at the time of the hearing, and had not been working for some time.
*983 Webb’s testimony consisted primarily of his opinion as to what effect Judith’s actions were having on “my little girl.” It developed that neither the present Mrs. Webb nor the minor child were at the hearing. Webb’s explanation was that although his young wife had testified at the prior hearing that she was changing her school location to Meridian, a house had been bought in Hattiesburg and both the young wife and his adopted child, Pam, were enrolled in school there. The chancellor, therefore, had no opportunity to talk with the ten-year-old child.
In the opinion of this Court, Webb’s testimony was unsatisfactory to say the least. It was obvious that he had a very high opinion of himself in regard to the child’s support. Although he had set a monthly amount to be received from the mother and was asking for its continuation and a judgment in arrears, he stated that “I don’t need the money, I can raise my little girl.” Webb further stated that he was going to do “whatever I can do to protect my little girl,” even though this meant leaving Mississippi and going to Florida. There was no remonstrance by the lower court to this revelation. Neither was there anything said when Webb refused to divulge his annual income and refused to state anything other than it was in “six figures.” Of course, it does not take a mathematician to know that this would include anything between $100,000 and $999,999.
ASSIGNMENTS OF ERROR
The mother, Judith Webb, advances three assignments of error, namely: (1) the court erred in finding there was a change in circumstances; (2) the court erred in terminating all of her visitation rights, and (3) the court erred in requiring appellant to continue making monthly payments and in giving a judgment for appellee for the “payments” past due.
In discussing the first two assignments together, we, of course, immediately are confronted with the principle too common to require a citation of authorities that this Court will not disturb the finding of the chancellor on matters such as those in this case unless we find him to be manifestly wrong. It is obvious that the decree of the lower court taking away any visitation rights whatever from appellant with her minor daughter was rather drastic action. This Court has always hesitated to exclude permanently a mother from seeing her child. Other courts have been of the same opinion. See Taraboletti v. Taraboletti, 56 Ill.App.3d 854, 14 Ill.Dec. 350, 372 N.E.2d 155 (1978); In Re: Jane B., 85 Misc.2d 515, 380 N.Y.S.2d 848 (1976); In Re: J.S. & C., 129 N.J.Super. 486, 324 A.2d 90 (1974); Thompson v. Thompson, 9 Wash.App. 930, 515 P.2d 1004 (1973); Brisby v. Whitted, 190 Neb. 309, 207 N.W.2d 696 (1973); M.L.B. v. W.R.B., 457 S.W.2d 465 (Mo.1970); Chandler v. Chandler, 109 N.H. 477, 256 A.2d 157 (1969); Devine v. Devine, 213 Cal.App.2d 549, 29 Cal.Rptr. 132 (1963); Radford v. Matczuk, 223 Md. 483, 164 A.2d 904 (1960); Friedland v. Friedland, 174 Cal.App.2d 874, 345 P.2d 322 (1959); McCabe v. McCabe, 218 Md. 378, 146 A.2d 768 (1958); Townsend v. Townsend, 205 Md. 591, 109 A.2d 765 (1954); Donovan v. Donovan, 212 N.W.2d 451 (1973); 2 Nelson, Divorce and Annulment 274, § 15.26 (2d ed. 1961).
As above stated, we are very hesitant to disturb a chancellor’s finding on child custody between parents. It is our opinion, however, in this case, after careful study and consideration, that the chancellor was manifestly wrong in denying appellant, who is the natural mother, any visitation rights with her minor daughter. It is our opinion that some form of visitation between the mother and her daughter should be allowed. Hopefully our opinion here will serve to help the development of lives in the future. Therefore, we reverse the cause on the first two assignments of error with directions that the court will hear the cause at a time to be set by the court and that some form of visitation rights be given appellant.
Regarding the part of the decree giving judgment against appellant in the sum of $1,500 for alleged unpaid monthly support payments to appellee and requiring *984 appellant to pay $150 per month in the future, we reverse those parts of the decree and render here. As hereinbefore set out, the first modification decree of December 19, 1978, only required appellant to pay a “reasonable amount.” The present decree is the first time the chancellor has set an amount. We hold that the alleged agreement between the parties as to a “reasonable amount” had no effect and could not serve to enlarge the court’s decree and give appellee a money judgment. Decrees and judgments cannot be based on such indefinite requirements as “reasonableness.” Furthermore, we hold that the lower court was manifestly wrong in requiring appellant, who was not working, to pay a monthly sum toward support of her daughter whom she could not even visit. In addition to this, as previously pointed out, appellee assured the court, while refusing to tell the court his income, that he was fully able to financially care for his adopted daughter. We tend to agree that an income which, according to him, could lack one dollar of being one million is sufficient for that purpose.
Therefore, we reverse and remand the cause for further consideration by the chancellor on visitation rights of appellant as hereinbefore set out. We reverse and render the cause as to the judgment against appellant for $1500 and child support payments in the amount of $150 per month.
REVERSED IN PART AND REMANDED; REVERSED IN PART AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.