[No. 48219-5. En Banc. September 2, 1982.]

*In the Matter of the Marriage of* NORMA IRIS ELAM, *Respondent, and* STANLEY PATRICK ELAM, *Appellant.*

*Clinton J. Henderson,* for appellant.

*Jay Roy Jones,* for respondent.

DOLLIVER, J.—This case was certified from Division Three of the Court of Appeals pursuant to RCW 2.06-.030(d) on the following question:

> To what extent, if any, is there a community interest in the increase in value of separate property due to inflation, where community funds and labor were used to improve the property?

The marriage between Stanley and Norma Elam lasted from April 1972 until its dissolution in October 1979. Mr. Elam entered the marriage without any discernible assets, while Mrs. Elam brought a home purchased in 1967 for $7,500 and a bank balance of $10,000.

At the time of the dissolution, the main point of contention was the treatment of Mrs. Elam's house. The court set the value of the house at $34,000, determined it was Mrs. Elam's separate property and that $9,000 had been contributed as community funds and labor for the purpose of improving the home. Mr. Elam was awarded $5,000 as his share of the community effort. Parenthetically, it should be noted that the trial court erroneously set the amount of

postnuptial contribution at $9,000. The record shows $3,500 in improvements were made by Mr. Elam prior to marriage so that the amount of community improvements was $5,500.

Mr. Elam appeals, claiming that in the absence of a demonstration by Mrs. Elam that the increased value of the house was due entirely to inflation, market conditions or other separate activity, the entire increase should have been found to be community property. If this had been done, he claims the difference between $7,500 and $34,000 or $26,500 should have been divided equally between the parties.

The Court of Appeals asks us to review several decisions which appear to be in conflict: *In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977) (Division One); *McCoy v. Ware,* 25 Wn. App. 648, 608 P.2d 1268 (1980) (Division Three); and *In re Marriage of Johnson,* 28 Wn. App. 574, 625 P.2d 720 (1981) (Division Two).

The starting point in understanding these cases is *Guye v. Guye,* 63 Wash. 340, 349, 115 P. 731 (1911). There the court said:

> We think the statute meant to declare that a specific article of personal property, or a specific tract of real property, once the separate property of one of the spouses, no matter how it may fluctuate in value, remains so, unless, by the voluntary act of the spouse owning it, its nature is changed.

Where the property in question was initially the separate property of one of the spouses and no contribution of community funds is made by either spouse, the answer is simple. The increase in value due to inflation would be the separate property of the owning spouse. *See* RCW 26.16-.010, .020. *See In re Estate of Witte,* 21 Wn.2d 112, 124–25, 150 P.2d 595 (1944).

The problem arises when the community has contributed time or money for the betterment of the separate property. *See* King, *The Challenge of Apportionment,* 37 Wash. L. Rev. 483 (1962). This question was addressed in *Hamlin v.*

*Merlino,* 44 Wn.2d 851, 857, 272 P.2d 125 (1954), where the court citing *Guye v. Guye, supra,* stated:

> "'Moreover, the right of the spouses in their separate property is as sacred as is the right in their community property, and when it is once made to appear that property was once of a separate character, it will be presumed that it maintains that character *until some direct and positive evidence to the contrary is made to appear.'* (Italics ours.)"

*Hamlin v. Merlino, supra* at 857–58.

The court continued:

> [W]here the separate property in question is *real estate or an unincorporated business* with which personal services ostensibly belonging to the community have been combined, the rule is that all the income or increase will be considered as community property *in the absence of a contemporaneous segregation of the income between the community and the separate estates.*

*Hamlin v. Merlino, supra* at 858.

It is this statement which appears to have been misinterpreted in recent cases. In affirming the principle in *Guye* that the separate property of a spouse remains separate property despite fluctuations in value, the court appears to suggest the rule might be different where the increase in value of the separate property was the result of something other than "natural enhancement" of the property. It discussed the rule to be applied where "separate property, owned at the time of marriage, is combined with community labor of the husband to create profits or to increase the value of the original separate property," *Hamlin,* at page 858, and expressed the view that in such a case an increase in value is presumptively community property in the absence of contemporaneous segregation.

The court in *In re Marriage of Harshman, supra,* commenting on *Hamlin v. Merlino, supra,* stated:

> We do not agree that contemporaneous segregation is the only way to maintain and prove the separate status of income. As footnoted in King, *The Challenge of Apportionment,* 37 Wash. L. Rev. 483, 493 (1962), this concept

was stated as dictum. The presumption may be overcome by clear and satisfactory evidence tracing the property to its origin or source as separate property. An owner of separate property should not be prohibited from proving the source of an increase in value of the separate estate because contemporaneous segregation did not take place if other admissible evidence is available to surmount the presumption. . . . Upon remand, the husband has the burden of establishing that the increase in the value of the property was due to the rents, issues, and profits of the separate estate as opposed to community labor. If the husband is unable to sustain this burden, the entire increase in value is presumed to be community, and the community would be entitled to an equitable lien or right of reimbursement as to the increased value.

(Citations omitted.) *In re Marriage of Harshman, supra* at 125–26.

Subsequent to *Harshman,* Division Three in *McCoy v. Ware, supra* at page 650, held:

The rule set forth in *In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977), provides the answer [as to who has the burden of establishing the cause of the increase in the value of the home]. Where the separate property in question is real estate on which personal services or funds of the community have been used to effectuate improvements, the resulting increase in value of the real estate is presumed to be community property to the extent that the community has a lien against the property to secure reimbursement for the increased value. This presumption, however, may be overcome by clear and satisfactory evidence that the increase is due to a cause other than community personal services or funds; *i.e.,* the natural course of inflation irrespective of the investment of community personal services or funds. *In re Marriage of Harshman, supra* at 125–26.

In *In re Marriage of Johnson, supra,* although the community made no substantial improvements on the house which was separate property, the mortgage payments were made with community property. In considering the question as to where the presumptions and burden of proof lie as to the increased value, Division Two commented:

In *McCoy v. Ware,* 25 Wn. App. 648, 608 P.2d 1268

(1980), Division Three of this court accepts the *Harshman* rationale and holds that the marital community is entitled to reimbursement for the increased value resulting from an investment of "community services or funds". 25 Wn. App. at 650. Otherwise, under *McCoy* and presumably *Harshman,* the community is relegated to a lien for the dollar amount of its investment plus interest. The *Harshman–McCoy* rule, which places the burden of proof on the separate property–owning spouse to disprove that an investment of community funds or labor produced the increase in value, appears to run counter to established precedent in this state. The principle is well established that one seeking a community interest in separate property must overcome the presumption to the contrary. *Hamlin v. Merlino, supra; Conley v. Moe,* [7 Wn.2d 355, 110 P.2d 172, 133 A.L.R. 1089 (1941)]; *Federal Land Bank v. Schidleman,* [193 Wash. 435, 75 P.2d 1010 (1938)]; *In re Estate of Woodburn,* [190 Wash. 141, 66 P.2d 1138 (1937)]; *Guye v. Guye, supra.* In any event, the record demonstrates that [the separate property–owner spouse] successfully carried the burden imposed upon him by *Harshman.*

*Johnson,* at 578–79.

After reviewing these cases it is our opinion the courts in *Harshman* and *McCoy* misread the dicta in *Hamlin.* All *Hamlin* said is that an increase in value of separate property attributable to community labor by the husband is presumptively community property absent contemporaneous segregation. It did not say, as *Harshman* and *McCoy* interpret it, that any increase in value of separate property is presumptively community property, regardless of the source of the increase. Such a rule would be inconsistent with other decisions of this court.

 Accordingly, we hold that any increase in the value of separate property is presumed to be separate property. This presumption may be rebutted by direct and positive evidence that the increase is attributable to community funds or labors. This rule entitles each spouse to the increase in value during the marriage of his or her separately owned property, except to the extent to which the other spouse can show that the increase was attributable to

community contributions. Moreover, the community should be entitled to a share of the increase in value due to inflation in proportion to the value of community contributions to the property. *See McCoy v. Ware,* 25 Wn. App. 648, 608 P.2d 1268 (1980) (Roe, J., concurring).

In the case before us, Mr. Elam testified he thought the prenuptial improvements effectively doubled the value of the house. Using his estimate and assuming no inflation, the dollar value of the house at the time of marriage would have been $15,000. Again assuming no inflation, the value of the house after the community contributions of $5,500 was $20,500. Of the $5,500, only 50 percent or $2,750 could be considered the share of Mr. Elam. $2,750 represents 13.4 percent of the $20,500 value of the house. Subtracting the value placed on the house at dissolution—$34,000—from the value of the house at marriage plus improvements—$20,500—gives an increase of $13,500 which arguably could be found attributable to inflation. Of this amount, 13.4 percent or $1,809 would be the pro rata share of Mr. Elam of the increase due to inflation. Adding this to his share of the contribution, $2,750, equals $4,559, which Mr. Elam had as an equitable lien against the house. The trial court awarded him $5,000.

There was sufficient evidence before the court to enable it to reach this conclusion, consistent with the principles articulated in this case. Furthermore, the distribution of the property was found by the court to be fair and equitable. This finding was not objected to and thus becomes a verity. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 213, 608 P.2d 254 (1980).

Affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.