[No. 5381-4-III.  Division Three.  June 21, 1984.]

*In the Matter of the Marriage of* JOAN BEPPLE, *Respondent, and* GENE BEPPLE, *Appellant.*

*Philip A. Lamb, Terry A. Brooks,* and *Brooks & Larson,* for appellant.

*Wiley G. Hurst* and *Elofson, Vincent, Hurst, Crossland & Menke,* for respondent.

GREEN, J.—Gene Bepple appeals the court's division of property in a decree entered August 19, 1982, dissolving his marriage to Joan Bepple. He contends the court erred in awarding Mrs. Bepple an interest in the proceeds of a stock redemption agreement which he argues is his separate property.

When the Bepples were married, Mr. Bepple owned 50 shares of stock in Valicopters, Inc., constituting a one–third interest. The remaining shares were owned by Ray Land and Stanley Hillwick, equally. During marriage Mrs. Bepple loaned the corporation $2,000 of her separate funds for operating expenses. She and Mr. Bepple also signed an

agreement with Peoples National Bank of Washington personally guaranteeing repayment of loans obtained from the bank for the corporation's expenses. The bank required both signatures before extending the loans. The guaranty was executed March 1, 1979, and covered substantial loans for that year, 1980 and 1981. It appears to be undisputed that the $2,000 from Mrs. Bepple was repaid and the corporation was never in default on the bank loans.

On May 1, 1979, a redemption agreement was executed whereby Mr. Hillwick sold his stock to the corporation for $73,300 plus interest payable in 96 monthly installments. This agreement and a promissory note for the redemption price were executed by Messrs. Bepple and Land individually and as officers of the corporation.

On January 21, 1981, a petition was filed to dissolve the Bepples' marriage. On August 20 a redemption agreement was executed between Mr. Bepple and the corporation for his 50 shares of stock. The price was $162,000, payable in 96 monthly installments of $2,458.22 each. A promissory note for the redemption price was signed by Mr. Land individually and as the corporation's president and by Mrs. Land.

Mr. and Mrs. Bepple entered into a property settlement agreement dividing all their property except the interest in the stock redemption agreement. The division of that property was submitted to the court at the dissolution hearing. The court determined the proceeds from the agreement were partially community and partially Mr. Bepple's separate property.

The court's findings, as explained in its memorandum opinion, were as follows: As a practical matter, the redemption of Mr. Hillwick's 50 shares of stock constituted a purchase by Mr. Bepple and Mr. Land of 25 shares each; consequently, Mr. Bepple's interest in the corporation increased after the Hillwick redemption agreement from one–third to one–half or by 16⅔ percent. Mr. Bepple's signature on the redemption agreement and note created a community obligation and payment for the shares. In addi-

tion, the continued operation of Valicopters, Inc., would not have been possible without the pledge of community credit through the guaranty signed by Mr. and Mrs. Bepple for the corporate loans from Peoples National Bank. Based on this reasoning, the court determined Mr. Bepple's interest in the Hillwick stock was community property. Mrs. Bepple was awarded 16⅔ percent of each monthly payment made to Mr. Bepple under his redemption agreement.

Mr. Bepple asserts the court erred in this award. He argues neither his signature on the Hillwick redemption agreement and the promissory note nor his and Mrs. Bepple's signatures on the personal guaranty of the loans obtained from Peoples National Bank created a community interest in the corporation. Hence, he contends any increase in the value of his stock constituted the rents, issues and profits of separate property and remained separate.

■■ We agree there was no community acquisition here. The Hillwick redemption agreement was a *corporate* acquisition. While Mr. Bepple may have been a surety on the note accompanying the agreement, *see Warren v. Washington Trust Bank,* 19 Wn. App. 348, 357, 575 P.2d 1077 (1978), *aff'd,* 92 Wn.2d 381, 598 P.2d 701 (1979), there is nothing therein to indicate either he or Mr. Land were purchasing the shares. Additionally, the redemption of Mr. Bepple's stock was for 50 shares, the same number he possessed before marriage. Further, his signature as a shareholder on the note was not a community contribution. *See Union Sec. Co. v. Smith,* 93 Wash. 115, 160 P. 304 (1916); *Spinning v. Allen,* 10 Wash. 570, 39 P. 151 (1895). Since the court must have in mind the correct character of the property before dividing it, *Baker v. Baker,* 80 Wn.2d 736, 746–47, 498 P.2d 315 (1972), we are constrained to reverse.

■ Correcting the characterization of the property does not end the inquiry. It is well established the community is entitled to an equitable lien for its contribution to separate property. *Baker v. Baker, supra* at 745; *McCoy v. Ware,* 25 Wn. App. 648, 650, 608 P.2d 1268 (1980); *In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977). Mr.

Bepple argues his corporate salary was adequate compensation to the community, citing *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954). In *Hamlin,* however, the community contribution was only through the husband's labors. Here Mrs. Bepple put both her separate property and her interest in the community property at risk by guaranteeing payment of several substantial loans which enabled the corporation to pay operating expenses and purchase equipment at a time when it was in financial jeopardy.

The court, in its memorandum opinion, found the corporation was in debt before obtaining the loans and the bank would not have extended the loans but for the guaranty. The loans, in turn, were necessary to maintain the business and purchase Mr. Hillwick's stock. Hence, the continued operation of Valicopters, Inc., and the increase in value of Mr. Bepple's stock, as evidenced by the redemption price, is due at least in part not only to his labors but also to the community guaranty to obtain the loans.

The mandate of RCW 26.09.080 is to make a just and equitable disposition in light of all the parties' property and the facts before the court. Because the trial judge's distribution was so closely linked to his characterizing the Hillwick stock redemption as a community purchase, we are unable to discern whether and to what extent he otherwise would have granted Mrs. Bepple a percentage of the payments under Mr. Bepple's stock redemption agreement. We note, parenthetically, the judge's award of 16⅔ percent interest to Mrs. Bepple appears to have been excessive because under his analysis that percent constituted the entire community interest. We, therefore, remand for redistribution of the proceeds in light of our determination with respect to the Hillwick redemption. In doing so, the court may take into consideration the parties' property settlement agreement and the community's contribution to the corporation through the guaranty of corporate debts together with Mrs. Bepple's personal loan.

Mrs. Bepple's request for attorney fees is denied.

Reversed and remanded.

MUNSON, C.J., and MCINTURFF, J., concur.