[No. 29873-9-I.   Division One.   August 9, 1993.]

*In the Matter of the Marriage of* CHERYL L.
PEARSON-MAINES, *Respondent, and*
CHESTER E. MAINES,
*Appellant.*

*Richard W. Swanson* and *Millikan & Swanson,* for appellant.

*Gail B. Nunn* and *Arnett-Kremiaan & Nunn,* for respondent.

GROSSE, J. — The appellant, Chester Maines, disputes the trial court's characterization and division of the parties' real and personal property in a dissolution proceeding. Mr. Maines claims the trial court mischaracterized the community interest in the separate residence of the respondent, Cheryl L. Pearson-Maines. The property was improved over the duration of the parties' relationship by both separate funds and community effort. We find the trial court correctly characterized the extent of the community interest and affirm.

The parties entered the relationship with separate property (both real and personal).[1] Mr. Maines owned a home in Arlington and a home in Roslyn. Mr. Maines had a bank account at Frontier Bank. Ms. Pearson-Maines owned property at Lake Ki, purchased by her in 1985 for $49,000. Ms. Pearson-Maines paid $11,000 down and the remaining balance was financed. Ms. Pearson-Maines maintained a bank account at Pioneer Bank and an account at Seafirst Bank.

The parties began living together in 1987, although the exact date is disputed. Mr. Maines claims the cohabitation began in March 1987, while Ms. Pearson-Maines claims the cohabitation did not commence until July 1987. The trial court did not enter a specific finding on the initial date of cohabitation, but its oral opinion indicated the cohabitation commenced in July 1987.[2] Mr. Maines testified that in early 1987, he assisted Ms. Pearson-Maines with the improvement of the Lake Ki property. Mr. Maines' testimony indicated that he installed a drain field, a shower, and an outhouse.

In July 1987, Mr. Maines' Arlington home was destroyed by fire. Ms. Pearson-Maines testified that Mr. Maines moved to the Lake Ki property in July 1987 after the Arlington fire. In November of 1987, the Lake Ki home was also destroyed by fire. The parties moved into a motel for approximately 3 months.

---

[1] The factual background of this case is complex and difficult to clearly establish from the record. The parties' testimony often conflicted, and the record provided this court is sometimes incomplete, hindering a thorough review.

[2] The findings of fact indicate that for the limited purpose of determining the community use and enjoyment of the Lake Ki property, the trial court found the date of cohabitation to be March 1988. Finding of fact 8.3. As Ms. Pearson-Maines points out, that is the date the parties moved back into the Lake Ki home after the fire.

The court's oral opinion further clarifies the date of initial cohabitation: "I believe the evidence was sufficient to establish a quasi-community relationship within the [In re Marriage of Lindsey, 101 Wn.2d 299, 678 P.2d 328 (1984)] standards from the time of the fire until the actual time of marriage."

In January of 1988, Mr. Maines received a partial insurance reimbursement of approximately $22,000 for the Arlington fire damage. Eighteen thousand dollars was deposited into Ms. Pearson-Maines' Seafirst account, and she testified at trial that those proceeds were used to pay Mr. Maines' overdue bills and the mortgage of $10,546 on the Arlington home. In February of 1988, Ms. Pearson-Maines received an insurance settlement of approximately $30,000 for the Lake Ki fire. The proceeds were paid in three separate installments in early 1988. The majority of the funds were deposited into her Pioneer Bank account, although some proceeds were also placed in the Seafirst Bank account. In addition, Ms. Pearson-Maines obtained a $15,000 loan from Seafirst Bank to further improve the Lake Ki property. Community funds were also placed into both accounts during this period, including the parties' earnings, which totaled approximately $30,000 for 1988.

According to Ms. Pearson-Maines, the insurance proceeds on deposit in the Pioneer and Seafirst accounts were spent to rebuild the Lake Ki property. Ms. Pearson-Maines kept a detailed record of the expenditures for the Lake Ki property. Overall, Ms. Pearson-Maines' records indicate that approximately $31,182 was spent to improve the Lake Ki property from August of 1986 until the parties' marriage. After marriage, an additional $5,509 was spent on the property. Ms. Pearson-Maines also testified at trial that she paid monthly mortgage payments, taxes, and insurance in the amount of $678 for the Lake Ki property.

In June of 1988, Mr. Maines received another $25,000 insurance disbursement for his Arlington house fire. Of the proceeds, $18,000 was deposited into Ms. Pearson-Maines' Pioneer Bank account. The remaining $7,000 is unaccounted for, except that Ms. Pearson-Maines testified that Mr. Maines used part of it to buy an automobile and to make a personal loan to a friend. The parties married on July 4, 1988. The parties spent the remaining $18,000 over the period of the next month. The parties made several expensive purchases,

including a truck and a trip to Las Vegas for their marriage and honeymoon. They also paid Mr. Maines' past due $3,000 tax obligation and spent approximately $4,000 on a septic tank, although it is not clear on which property the tank was installed. The parties could not account for the remainder of the checks written that month. After the parties' marriage in July, Ms. Pearson-Maines made Mr. Maines a signatory on the Pioneer Bank account. The parties eventually separated on August 8, 1990, after moving from Lake Ki to a duplex in Anacortes.

The primary issue at trial was the characterization of the Lake Ki property. The trial court found that the Lake Ki property was Ms. Pearson-Maines' separate property and that the community retained an interest in the property by way of community enhancement in property value. The court assigned a negligible value to the building at the time of the fire, which occurred at the outset of the parties' cohabitation. The court found that at the date of trial the building was worth $50,000; the amount of the enhancement to the building over the duration of the parties' relationship was therefore approximately $50,000. Of that amount, $28,000 was attributed to the materials and labor purchased with Ms. Pearson-Maines' separate funds from the Seafirst loan and the fire insurance proceeds. The court found that the remaining $22,000 enhancement in value stemmed from community effort. The court offset this community interest by $11,000 for the value of the community benefit from use of the property over 25 months. The remaining $11,000 community interest was awarded to Ms. Pearson-Maines together with her separate property interest in the underlying property. The court also found that any market enhancement of the property retained the separate character of the property and awarded that value to Ms. Pearson-Maines.

The major issue on appeal is the trial court's characterization of the Lake Ki property as separate property and the valuation of the community interest in the Lake Ki property.[3]

---

[3] In a dissolution proceeding, the trial court is authorized under RCW 26.09.080 to exercise its discretion in awarding property, and all property is before the court

■ The well-established rule is that the character of property, whether separate or community, is determined at its acquisition. Property acquired after marriage is presumptively community property. The presumption may be rebutted by clear and satisfactory evidence. *E.I. DuPont de Nemours & Co. v. Garrison*, 13 Wn.2d 170, 174, 124 P.2d 939 (1942). If the property was separate property at the time of acquisition, it will retain that character as long as it can be traced and identified. *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). In the instant case, the Lake Ki property was undisputedly Ms. Pearson-Maines' separate property at acquisition because it was purchased prior to cohabitation and marriage from her separate funds.

■ Mr. Maines argues that the trial court failed to properly assess the extent of the community interest in the Lake Ki property. In the instant case, the trial court found the parties' premarital cohabitation fell within the *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984)[4] standards, a fact which neither party disputes. Therefore, it is appropriate to review the community contributions and transactions of the parties prior to their marriage in July of 1988.

■ ■ Mr. Maines contends that community funds were used to improve the property after the fire. Mr. Maines claims that the fire insurance proceeds received by Ms. Pearson-

---

for distribution, whether community or separate. The characterization of property alone is not controlling; the trial court must dispose of the property in a just and equitable manner considering all the circumstances. *In re Marriage of Konzen*, 103 Wn.2d 470, 477-78, 693 P.2d 97, *cert. denied*, 473 U.S. 906 (1985); *In re Marriage of Irwin*, 64 Wn. App. 38, 47-48, 822 P.2d 797, *review denied*, 119 Wn.2d 1009 (1992). The trial court's property division is reviewed for a manifest abuse of discretion. *Konzen*, 103 Wn.2d at 478. In addition, if the trial court's findings of fact are supported by substantial evidence in the record, they will be accepted as verities on appeal. *In re Marriage of Thomas*, 63 Wn. App. 658, 821 P.2d 1227 (1991).

[4]Under *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984), the trial court may examine the parties' relationship during cohabitation and make a just and equitable disposition of the property acquired during that period.

Maines became community property after they were commingled with community funds in the Pioneer Bank account. Initially, insurance proceeds take on the character of the property insured. *In re Estate of Hickman*, 41 Wn.2d 519, 523, 250 P.2d 524 (1952). Accordingly, the fire insurance proceeds took on the character of the underlying insured Lake Ki property and were Ms. Pearson-Maines' separate property at acquisition.[5] Moreover, the character of this separate property continues through changes and transitions if it can be traced and identified. Only if community and separate funds are so commingled that they may not be distinguished or apportioned is the entire amount rendered community property. *In re Estate of Allen*, 54 Wn.2d 616, 622, 343 P.2d 867 (1959); *In re Estate of Witte*, 21 Wn.2d 112, 125, 150 P.2d 595 (1944); *E.I. DuPont de Nemours & Co. v. Garrison*, 13 Wn.2d at 176; *In re Estate of Binge*, 5 Wn.2d 446, 456-57, 105 P.2d 689 (1940).

Mr. Maines argues the proceeds were so commingled with community funds that the character of the proceeds became community. Mr. Maines testified that his paychecks and disability checks were also deposited into both the Seafirst and Pioneer accounts, as were his separate insurance proceeds for the Arlington fire. Therefore, Mr. Maines' separate funds and community income were pooled together with Ms. Pearson-Maines' insurance proceeds and paychecks. Yet the funds were not necessarily so commingled that they could not be apportioned. When money in a single account cannot be apportioned to separate and community sources, the community property presumption will render the entire fund community property. *In re Estate of Smith*, 73 Wn.2d 629,

---

[5]Mr. Maines also asserts that the insurance premiums were paid with community funds, and consequently the community has an equitable lien against the proceeds. However, a spouse seeking a community interest in separate property must overcome the presumption that separate property maintains its separate character absent evidence to the contrary. *Hamlin v. Merlino*, 44 Wn.2d 851, 857-58, 272 P.2d 125 (1954). Mr. Maines has not produced any evidence that the premiums prior to the fire were paid with community funds, and therefore the trial court appropriately characterized the proceeds as Ms. Pearson-Maines' separate property.

631, 440 P.2d 179 (1968). However, if the sources of the deposits can be traced and apportioned, and the use of withdrawals for separate or community purposes can be identified, the funds are not so commingled that the account itself becomes community property. *See* Cross, *The Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 17, 62 (1986); *In re Marriage of Mix*, 14 Cal. 3d 604, 611, 536 P.2d 479, 483, 122 Cal. Rptr. 79 (1975) (mere commingling of funds in an account does not destroy separate funds if their amount can be apportioned). In the instant case, Ms. Pearson-Maines traced the deposits and expenditures of the Lake Ki insurance proceeds initially deposited into the Seafirst and Pioneer accounts and also traced community deposits and expenditures from those accounts. This court stated in *Pollock v. Pollock*, 7 Wn. App. 394, 404, 499 P.2d 231 (1972):

> [I]f the post-marital purchase price, improvement and premium payments were paid out of separate property, the separate property status of the three items would not be affected. *The presumption is that if there are both separate and community funds and there are sufficient separate funds from which the payments can be made, then the payments will be presumed made from such separate funds.*

(Citations omitted. Italics ours.) *See also In re Estate of Woodburn*, 190 Wash. 141, 144-45, 66 P.2d 1138 (1937) (if spouse has separate income, charges against separate property are presumed paid out of that income). While the authorities relied on by *Pollock* address circumstances in which separate money was available that was not commingled with community funds, the principle also logically applies when separate and community funds are deposited into the same account. At trial, Ms. Pearson-Maines submitted copies of her bank statements for the Seafirst and Pioneer accounts over that period of time and tracked the deposits of insurance proceeds. Ms. Pearson-Maines also submitted a detailed accounting of the moneys spent on improvements at Lake Ki, with check numbers, dates, and purpose of the expenditures. Moreover, she provided a record of Mr. Maines' separate insurance proceeds deposits and expenditures.

■ Applying the rule established in *Pollock*, a presumption arises that the improvements were made with funds from those separate proceeds available at that time. The trial court found the Seafirst loan and the fire insurance proceeds made $44,000 available for the improvements made during the period after the fire. The court found that between $23,000 and $28,000 was spent on rebuilding the Lake Ki residence. Ms. Pearson-Maines sufficiently traced the use of her separate funds, and the trial court correctly characterized those improvements as separate property.[6]

We note that a different result would occur if the Lake Ki proceeds had been used to purchase some asset unrelated to Ms. Pearson-Maines' separate property. In such a case, the community property presumption would apply and the separate nature of the asset could not be established unless the community funds were shown to be dissipated. *See* Cross, 61 Wash. L. Rev. at 62; *cf. Pollock*, 7 Wn. App. at 404-05 (substantively utilizing this analysis but finding the separate claimant failed to produce sufficient evidence of community expenditures to rebut the community presumption).

Mr. Maines argues that this case is analogous to *In re Estate of Carmack*, 133 Wash. 374, 233 P. 942 (1925). In *Carmack*, the court held that when the separate property of the wife was sold and the proceeds were "swallowed up in general community business transactions" the funds became so commingled with community funds that it was impossible to trace the money to after-acquired real estate. The facts of *Carmack*, however, do not state with any specificity whether any effort was made to trace the separate proceeds through deposits and expenditures. The lack of factual analysis in *Carmack* precludes a conclusive analogy to the instant case.

---

[6]This result is also suggested by *State ex rel. Van Moss v. Sailors*, 180 Wash. 269, 39 P.2d 397 (1934). In *Van Moss*, the separate property of a business was enhanced with community effort and services. The court noted that community expenses were paid with withdrawals from the business, thus compensating the community for its effort and accordingly the commingling did not destroy the separate character of the property. This principle of *Van Moss* was followed in *Toivonen v. Toivonen*, 196 Wash. 636, 84 P.2d 128 (1938) and again recognized in *In re Estate of Binge*, 5 Wn.2d at 461.

Here, the evidence indicates that separate moneys were paid into Ms. Pearson-Maines' accounts and expended from the same accounts directly for the Lake Ki improvements.

■ Accordingly, the trial court's characterization of the approximately $28,000 spent on labor and materials for the Lake Ki property as Ms. Pearson-Maines' separate property was not error. The trial court's assessment of the remaining community interest is likewise supported by the evidence. Under *In re Marriage of Elam*, 97 Wn.2d 811, 650 P.2d 213 (1982), any increase in the value of separate property is also presumed to be separate. The presumption may be rebutted by evidence that the increase was attributable to community effort. The community receives that portion of the increase attributable to community contributions. *Elam*, 97 Wn.2d at 816-17. In addition, any increase due to inflation is divided consistently with the proportion of community and separate contributions.

■ Mr. Maines argues that the correct measure of his community contribution should be the value of his labor, which he claimed at trial was approximately $33,000. The valuation of the community services invested in separate property may be approached by either determining the equivalent of a reasonable wage or by fixing the resulting increase in value. *See* Cross, 61 Wash. L. Rev. at 71. As Professor Cross notes, addressing a situation identical to the instant case:

> [I]f one spouse works on or expends community funds on the *other* spouse's separate property, without intending a gift, only the increased value should be the measure, because the contributing spouse hardly needs to be protected against an unintended use of the community asset, and there would be a danger that a contrary result could involve giving a power to one spouse to "improve the other out" of his (or her) separate property.

(Footnote omitted.) Cross, 61 Wash. L. Rev. at 71. The trial court's approach was consistent with this principle. Moreover, the court specifically found that Mr. Maines had not met the burden of proving the dollar amounts of his efforts, therefore a valuation of his reasonable wage was impracticable. The trial court found that after taking into account Ms.

Pearson-Maines' separate contribution of $28,000 to the total $50,000 enhancement, the remaining $22,000 increase in value was the result of both parties' community efforts. This finding is supported by substantial evidence, including the parties' testimony that they put a considerable amount of personal effort into reconstruction.

■ The court also properly applied an offset for the community benefit and use of the property. Under *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984), the trial court may offset a community right of reimbursement against the reciprocal benefit received for the use and enjoyment of the property. The trial court's finding that the community was benefited by the use of the Lake Ki property is supported by the record. The $11,000 offset is also reasonable; it credits the value of the use in the amount of approximately $400 per month. The postseparation rental value of the property is $700 per month, and the trial court gave the community the benefit of a lower figure.

We find that the trial court's characterization of the Lake Ki property was proper and affirm the judgment of the trial court.

A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and the remainder shall be filed for public record pursuant to RCW 2.06.040.

SCHOLFIELD and KENNEDY, JJ., concur.