# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>HENRY LOUIS LOMASNEY, JR.,<br><br>Appellant,<br><br>and<br><br>DARCY KASSANDRA NEWBY,<br><br>Respondent. | No. 85139-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In this dissolution action between Henry Lomasney and Darcy Newby, Lomasney appeals the superior court's disposition of property, asserting the superior court erred in characterizing the equity in Lomasney's separate property home. Although the court correctly referred to the home as separate property, it erroneously characterized the appreciation in home equity as community property, awarding Newby 55 percent of the "community's net equity" in the home. We reverse and remand for a new disposition of the parties' property based on the correct characterization of the home equity.

I

The trial testimony and the trial court's unchallenged findings of fact[1] concerning the equity in the home may be summarized as follows: Lomasney and Newby started dating in 2009. In 2011, Lomasney lived in Sammamish with his

---

[1] Unchallenged findings of fact are accepted as true on appeal. In re Marriage of Laidlaw, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018).

sister, Christina Lomasney. Lomasney wanted to find another house to buy, and his sister connected him with a real estate agent to speak with him about house options. In 2012, Lomasney bought a house in Seattle. Christina Lomasney testified Newby was not part of the search or subsequent purchase of the Seattle home. Lomasney testified that after purchasing his house in 2012, he began making improvements to it, including a basement apartment to rent out, the basement bathroom, the deck and hot tub, curtain rods and curtains for the bedroom, and a solar array.

In September 2014, Newby moved into Lomasney's house. The parties formed a committed intimate relationship (CIR) at that time. Lomasney continued to pay for all of the maintenance costs for the house, the underlying loans including the mortgage, the home equity line of credit (HELOC), and his 401K loan. Home renovation projects that occurred during the CIR include the patio, kitchen backsplash, kitchen countertop, garbage disposal, showerhead, house painting, landscaping, and a storm door.

Newby testified that after moving in with Lomasney, she began paying toward the mortgage and wrote a $1,000 check each month. Initially, the memo line for the check said "rent," but after Lomasney said they did not have a landlord-tenant relationship and it was her house too, she started writing "mortgage" instead. Newby continued to do so for six years, believing she was investing in their relationship and a home. On rebuttal, Lomasney testified he never instructed Newby to write "mortgage" on her monthly checks, and it bothered him that she did so, but he never raised that concern with her.

2

In July 2016, the parties married. During their marriage, the parties filed joint tax returns, maintained a joint credit card account, or a credit card account on which Lomasney added Newby, and never had a joint checking account. Some of the improvements made on the home were paid by Newby on the joint credit card account or with the parties' joint tax refund. Lomasney paid for the remaining expenses from his checking account. When the parties shared in the home improvement costs, Lomasney testified he did all of the manual work but Newby should receive a refund for her share of all expenses that she contributed to for home improvements. On cross-examination, Lomasney claimed the home improvements after Newby moved in were his own projects and she did not play a role in that work.

The non-party witnesses generally agreed that both parties contributed to improvements to the home. Jenny Newby knew her sister contributed financially to the renovations. Danielle Zelinski testified Newby did a lot of work inside the house with the furniture, decorating, and cleaning. She characterized these tasks as Newby's strength and Lomasney's weakness. Zelinski stated Lomasney completed much of the physical labor part of the projects as this was his strength and interest. Zelinski testified Newby took the lead on some aspects of the home renovations with Lomasney's support as he said it was " 'their home.' "

Newby testified that the parties completed several home renovation projects. Both worked together, with Newby actively involved in the planning and design of the renovations and Lomasney involved in the physical labor. Newby testified she helped with the physical labor based on what she could do. From the

3

time they started living together in 2014 to the dissolution trial in 2022, the house appreciated in value. Newby believed the value increased not only because of market factors, but also because of their shared work on the home. On rebuttal, Lomasney testified Newby exaggerated her involvement in home projects, that he did all of the work and paid for things from his account except for some items that they paid together.

The parties separated in August 2020.

II

On April 15, 2021, Lomasney filed a petition for dissolution. Lomasney claimed the house should be characterized as separate property and awarded to him. In her response, Newby alleged that because she lived in the home and made monthly payments toward the mortgage, it should be considered community property. She also alleged the parties "shared expenses" and "spent significant amounts of marital funds improving the home."

In her trial brief, Newby claimed a marital lien on the property based on her having invested in the upkeep, design, and landscaping, and contributions to the mortgage. She described one of the issues to be determined at trial as whether the community was entitled to an equitable lien associated with the increase in value of the family home resulting from Newby's contributions. Newby was more expansive in arguing the parties pooled resources for purposes of establishing a CIR. She argued the community had made "vast and extensive improvements" on the property and argued that Lomasney should not receive unjust enrichment from the community's contributions. As to the lien specifically, Newby focused on her

having made monthly contributions, arguing her contributions exceeded those of Lomasney's. Newby contended she contributed to the mortgage in lieu of making retirement contributions.

In his trial brief, Lomasney disputed that any lien was owed. Citing In re Marriage of Miracle, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984), he argued that Newby's contributions were more than offset by the community's beneficial use of the property during the community period. Citing In re Marriage of Wakefield, 52 Wn. App. 647, 652, 763 P.2d 459 (1988), Lomasney argued that Newby was not entitled to a share of the property's increased value due to passive appreciation, but at most she was entitled to the property's increased value due only to the extent the community contributed to improvements that increased the value of the property.

In closing argument, Newby for the first time argued that the property's appreciation in value during the CIR and the marriage ("the community period") was community, based on a theory of commingling. She credited Lomasney for his payments toward the property before the community period as a separate property credit to which he was entitled. This position differed from her position at the pleading stage and in her trial brief. Newby did not argue in closing that the issue was the value of the marital lien against the separate property, and never attempted to value the lien, but rather argued that because of the commingling of separate and community investments into the property, a presumption arose that it was "all community." Arguing that the evidence clearly established that community efforts produced at least some increase in value in the property and

5

relying on the stated presumption, Newby argued that Lomasney had the burden to show tracing of separate property investments to overcome the community character of the property. She argued that he had made no effort to do so, and therefore was limited to credit for his down payment and payments toward the mortgage predating the community period.

On January 25, 2023, the trial court entered two final orders. In the final dissolution decree, the court awarded a money judgment to Newby for $320,239 as her share of the home equity and a $144,601 equalization judgment to bring equal her share of the community property. A line-item breakdown of the assets and debts distributed between the parties was included as exhibit B to the final dissolution decree. The court awarded partial fees and costs to Newby in the amount of $25,000 based on need and ability to pay. The judgments bore interest at 12 percent. Newby was ordered to convey the house to Lomasney.

The line-item breakdown and the subsequent order characterized the home as Lomasney's separate property. The court explained that because of the offsetting beneficial use of the property enjoyed by the community, it would not make an award to Newby from the home equity based on her having contributed $1,000 per month. Nevertheless, in the court's findings and conclusions about a marriage, the court explained its division of the home equity, describing it as the "community's net equity":

> The *community's net equity* in the home is calculated by taking the appraised value at the time the parties began living together in 2014 ($630,000), less the estimated mortgage at that time ($417,000 mortgage at purchase per Ex[hibit] 135 less estimated $56,810.95 payments made). This amount ($269,810) is assigned to

6

> [Lomasney] as his separate property, effectively *giving him credit for his down payment and mortgage payments prior to cohabitation* (CIR). This net amount is then deducted from the appraised value at the time the parties separated ($1,200,000), less the estimated amount of the mortgage at that time ($347,936). The difference is the community's net equity ($582,254), of which [Newby] shall receive 55% ($320,239). *There was insufficient evidence for further deductions from this net equity payment.*

(Emphasis added.) The court's calculations followed those proposed by Newby at closing argument based on the theory that comingling investments had rendered the home equity community and placed on Lomasney the burden to show tracing. The court described the division in the language of a lien in favor of the community, concluding, "Based on the facts and circumstances of this relationship, equity requires that Ms. Newby be compensated for her share of the community's enhancement in value of the Seattle home, while Mr. Lomasney will continue to receive the on-going benefits of the real property he is awarded." The court concluded that the "division of real property described in the final order is fair (just and equitable)." The court denied Newby's request for spousal support.

The trial court did not find Lomasney credible and found Newby credible. As to the pooling of the parties' resources and services for the home renovation projects, the court found that Lomasney and Newby were a team, had shared goals and projects in mind, developed and offered complementary skillsets to create and maintain a home, and both contributed their money and energy for the benefit of their relationship and future life together. That Lomasney performed a majority of the manual labor did not minimize the fact that Newby contributed to their joint projects in other meaningful ways.

Lomasney appeals.

7

III

A

A trial court's characterization of property is a mixed question of law and fact. In re Marriage of Watanabe, 199 Wn.2d 342, 348, 506 P.3d 630 (2022). The characterization of property is reviewed de novo as a question of law. Id. at 348-49. Findings of fact, including those supporting the characterization of property, are reviewed for substantial evidence. Id. at 348. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. Id. Unchallenged findings of fact are accepted as true on appeal. In re Marriage of Laidlaw, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018). We defer to the trier of fact for resolution of conflicting testimony, evaluation of the evidence's persuasiveness, and assessment of the witnesses' credibility. In re Parentage of G.W.-F., 170 Wn. App. 631, 637, 285 P.3d 208 (2012).

We review the trial court's dissolution orders for abuse of discretion. In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. Id. A trial court's division of marital property will not be reversed absent a showing of manifest abuse of discretion. In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). Appellate review is limited to whether the trial court's distribution of property was fair and equitable. Id. The trial court manifestly abuses its discretion if it makes an untenable or

unreasonable decision. In re Marriage of Kaseburg, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005).

B

Lomasney argues the trial court erred in its characterization of the equity in his residence and the value of the community lien in the home. We agree.

All property, both separate and community, is before the court for disposition in a dissolution proceeding. RCW 26.09.080; In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). " 'The status of property as community or separate is not controlling. Rather, the trial court must ensure that the final division of property is 'fair, just and equitable under all the circumstances.' " In re Marriage of Irwin, 64 Wn. App. 38, 48, 822 P.2d 797 (1992) (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)); see RCW 26.09.080. But " 'the court must have in mind the correct character and status of the property . . . before any theory of division is ordered.' " Brewer, 137 Wn.2d at 766 (quoting Blood v. Blood, 69 Wn.2d 680, 682, 419 P.2d 1006 (1966)). " '[R]emand is required where (1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way.' " In re Marriage of Kraft, 119 Wn.2d 438, 449, 832 P.2d 871 (1992) (quoting In re the Marriage of Shannon, 55 Wn. App. 137, 142, 777 P.2d 8 (1989)).

An equitable lien is a remedy intended to protect one party's right to reimbursement. Miracle, 101 Wn.2d at 139. A right to reimbursement may not arise if the contributing spouse received a reciprocal benefit flowing from the use

9

of the property. Id. A trial court *may* impose an equitable lien to protect the reimbursement right when the circumstances require it. Id. "[A]ny increase in the value of separate property is presumed to be separate property." In re Marriage of Elam, 97 Wn.2d 811, 816, 650 P.2d 213 (1982). "This presumption may be rebutted by direct and positive evidence that the increase is attributable to community funds or labors." Id. Elam said this rule entitled each spouse to the increase in value during the marriage of his or her separately owned property, except to the extent to which the other spouse can show that the increase was attributable to community contributions. Id. at 816-17. Accordingly, the claiming spouse bears the burden to show that some increase in the value of separately owned property was attributable to the community.

Here, the trial court's characterization of the home equity did not adhere to the principles of Elam and Miracle. The trial court characterized the appreciation in equity of Lomasney's separate property house as community and placed the burden on him to trace his separate interest instead of Newby. This was error. The trial court's mischaracterization of the home equity requires reversal because the court did not have in mind the correct character and status of the property before ordering its division. See In re Marriage of Bepple, 37 Wn. App. 881, 885, 683 P.2d 1131 (1984) (remanding for the redistribution of stock proceeds because the trial court's distribution was so closely linked to characterizing the stock redemption as a community purchase and the appellate court was unable to discern whether and to what extent the trial court otherwise would have granted

the wife a percentage of the payments under the husband's stock redemption agreement).

Newby first relies on a commingling theory as a basis to affirm. Newby argues the jointly directed home renovations and Newby's monthly checks to Lomasney for "mortgage" converted the home from Lomasney's separate property into community property. We disagree.

Separate property will remain separate property through changes and transitions, if the separate property remains traceable and identifiable. In re Marriage of Chumbley, 150 Wn.2d 1, 5, 74 P.3d 129 (2003). If community and separate funds are so commingled that they cannot be distinguished or apportioned, the entire amount is rendered community property. In re Marriage of Tulleners, 11 Wn. App. 2d 358, 361, 363, 369, 453 P.3d 996 (2019) (commingled pension, cashed-out pension, individual retirement accounts, and annuity assets). "When money in a single account cannot be apportioned to separate and community sources, the community property presumption will render the entire fund community property." In re Marriage of Pearson-Maines, 70 Wn. App. 860, 866-67, 855 P.2d 1210 (1993).

Although the trial court correctly identified the home as Lomasney's separate property, to the extent of its stated reasoning for awarding Newby 55 percent of the home equity the trial court called that equity the "community's." The trial court's calculations adopted precisely Newby's contention in closing argument that Lomasney failed to trace what part of his home equity was separate and what part was community when the court found, "There was insufficient evidence for

further deductions from this net equity payment." This sentence immediately followed the court's statement of what Newby shall receive, after the court had deducted Lomasney's precommunity contributions, so this final statement logically indicates the payment to Newby was determined based on the extent Lomasney had evidence sufficient to support reducing it, effectively requiring him to trace a separate property interest. The authorities Newby relied on, such as In re Marriage of Schwarz, concerned the commingling of checking, savings, and retirement accounts, not real property. 192 Wn. App. 180, 206-09, 368 P.3d 173 (2016). Newby has cited no authority, and we have found none, treating real property to whose value a community has contributed as incapable of apportionment in the same manner as commingled cash accounts. By placing the burden on Lomasney to trace his separate interest in the appreciation in value of his separate real estate, the trial court departed from the rule of Elam that placed the burden on Newby to show that the increase was attributable to community contributions. 97 Wn.2d at 816-17.

Alternately, Newby seeks to portray the property division as an award of Lomasney's separate property to Newby, and defend the division on that basis, noting that separate property is not entitled to "special treatment," but is subject to the statutory criteria of RCW 26.09.080 alike with community property. In re Marriage of Larson, 178 Wn. App. 133, 140, 313 P.3d 1228 (2013) (citing Konzen v. Konzen, 103 Wn.2d 470, 477, 693 P.2d 97 (1985)). But it remains that the trial court here never stated that it believed it was making a substantial award of separate property, or noted any reasoning for doing so. In Larson, where, unlike

here, the parties had been in a long-term marriage, the court made an award of separate property for reasons it explained at length in its decision. 178 Wn. App. at 144-45. First, it recognized the recipient spouse's intangible contributions to the marital community. Id. at 144. Second, the court explained that the award would help ensure the recipient spouse's "short- and long-term financial security" for several reasons. Id. at 145. The trial court here proceeded in exact accordance with Newby's proposed approach to the home equity based on a theory of its being community property, the trial court identified the equity as being the "community's," it awarded 55 percent to Newby suggesting a starting point from the premise of a 50-50 division of the equity, it characterized that award as required by equity to compensate the community for its enhancement of the home, and there was no acknowledgement of making a substantial award of separate property in an otherwise relatively short term marriage. The clearest indication of the record is that the court viewed the appreciation in equity as community.

At oral argument, Newby placed a new emphasis on her argument that the division should be viewed as an award of separate property. She pointed out that no statutory presumption protects separate property and that a practice guide suggests for this reason that the equitable lien is an obsolete doctrine.[2] But this still depends on our overlaying a theory the trial court never indicated it was adopting, which in these circumstances we are not inclined to do. Cf. Tulleners, 11 Wn. App. 2d at 369 ("For appellate review to be possible, a trial court's findings

---

[2] Wash. Court of Appeals oral arg., In re the Marriage of Lomasney, No. 85139-0-I (July 17, 2024), at 13 min., 01 sec. to 14 min., 50 sec., https://tvw.org/video/division-1-court-of-appeals-2024071124/.

of fact must declare the ultimate facts that justify its conclusions; if they do not, an appellant is entitled to have the cause remanded so that findings adequate for review can be made."). Newby argued that commingling led to a presumption of treating the equity as community and the trial court adopted the argued-for result even though Newby's argument was incorrect and the trial court never provided an analysis of a correct theory to arrive at that result. To the extent of what the trial court stated, it viewed the appreciation in equity as community. Because this was incorrect under Elam, the trial court's award of home equity appeared to depend on its characterizing it as community property, and it is not clear the trial court would have made the same division based on a correct characterization, remand is required.

C

Although Newby does not appear to argue on appeal that she established that Lomasney ever recharacterized the home from separate property to community, Lomasney is correct that the trial court did not find this. The trial court made the following finding of fact: "As soon as the parties began cohabitating, Ms. Newby made a monthly contribution to the mortgage and *there was an understanding at that time and thereafter that the home was theirs together-that it was shared.*" (Emphasis added.) Lomasney argues the trial court erred in relying on the emphasized part of this finding of fact when it concluded that equity required that Newby be compensated for the community's enhancement in value of the home. Newby agreed with questioning by her attorney that it was her

14

"understanding" that the home was "shared."[3] Newby's testimony constitutes substantial evidence to support the finding of fact, but the finding does not support a conclusion that Lomasney intended to recharacterize the home as community property.

Newby does not appear to respond directly to this argument, but instead claims the trial court appropriately concluded that the equity in the home from the time of cohabitation was community property because it determined she overcame the rebuttable presumption based on direct and positive evidence. Newby's argument is based on the same authorities and contentions addressed above and does not support that the court determined that the home equity became community property through commingling.

IV

Both parties request attorney fees on appeal. Newby relies on a theory of ability to pay for her request, while Lomasney argues in his reply brief that Newby committed intransigence with this appeal.

Neither party complied with the requirements of RAP 18.1. Lomasney raised his attorney fee request for the first time in his reply brief, which fails to comply with RAP 18.1(b). Newby did not file an affidavit of financial need no later than 10 days prior to the date this case was set for oral argument, which fails to comply with RAP 18.1(c). We deny both parties' fee requests.

---

[3] The deed of trust Newby signed as non-borrower spouse contains a disclaimer, where she acknowledged that the home is the "sole and separate property of [Lomasney] . . . [Newby] agrees he/she will make no claim of title or interest therein."

V

We hold that the trial court mischaracterized the home equity as community property and that remand is required as a result. We therefore reverse the property distribution. We vacate the $320,239 home equity judgment entered in Newby's favor. We vacate the equalization judgment as well. Lomasney's home was the largest asset owned between the parties and constituted a significant portion of the entire estate. Accordingly, on remand, the entire property distribution should be before the trial court because of the mischaracterization of the home equity. See In re Marriage of Tupper, 15 Wn. App. 2d 796, 815, 478 P.3d 1132 (2020) (reversing and remanding the case to the trial court to reconsider the entire property distribution because the court's division of a Social Security benefit was void); In re Marriage of Rockwell, 141 Wn. App. 235, 253-54, 255, 170 P.3d 572 (2007) (remanding to trial court with specific direction as to how to characterize a federal pension, but leaving it to the trial court's discretion to reconsider its property distribution based on its re-characterization); In re Marriage of Shui, 132 Wn. App. 568, 574, 587, 591, 125 P.3d 180 (2005) (remanding to the trial court for reconsideration of the distribution of the parties' assets where the trial court's methodology classifying stock options, the main asset to distribute, was erroneous and the trial court compounded this error by failing to recognize that the proceeds derived from the stock options were commingled and entirely community property).

We need not reach any other issues. We reverse and remand for the trial court to value the marital lien against the separate property home and consider a

new disposition of the parties' property based on the correct characterization of Lomasney's home equity.

Birk, J.

WE CONCUR:

Chung, J.          Mann, J.