IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 31073-6-III |
| GENE EDWARD WELTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARINA LEE MARTIN WELTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent and | ) | |
| Cross Appellant. | ) | |

SIDDOWAY, C.J. — Gene Welton appeals the outcome of the dissolution of his marriage to Marina Martin. He argues that the trial court erred in dismissing his affidavit of prejudice as untimely, giving Ms. Martin an equitable lien on his separate property interest in a limited liability company (LLC), and awarding Ms. Martin attorney fees. Ms. Martin cross appeals, arguing that the trial court abused its discretion by not awarding her a just and equitable amount. We find no error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

Gene Welton and Marina Martin met in the spring of 1996 and were married in July 1997 when they were 37 and 40 years old, respectively. Ms. Martin had two sons from a prior marriage. Mr. Welton had been married twice before, but had no children. They had no children together.

At the time of the marriage Mr. Welton worked as the operations manager of an orchard and controlled atmosphere (CA) warehouse operation owned by him and his parents. He began working for his parents' orchard operation when he graduated from high school in 1978. The orchard operation was later organized as a limited liability corporation, Welton Orchards & Storage LLC, before Mr. Welton and Ms. Martin met. Approximately 18 months before Mr. Welton's marriage to Ms. Martin, his parents gifted him a 33 percent interest in the LLC, retaining 67 percent ownership and control.

Before marrying Mr. Welton, Ms. Martin had worked for Costco in Anchorage, Alaska for two years, where, as a manager in training, she earned more than $34,000 a year plus benefits. In 1995, she moved to Wenatchee and began work at the East Wenatchee Costco, assigned to various positions. All paid less than had her management training position in Anchorage.

During the 12-year marriage, Mr. Welton received a modest salary for his work for the LLC, ranging from $1,600 to $3,000 a month. In addition to his salary, he

received rent free a double-wide home on orchard property, health and dental insurance, and a cell phone.

Ms. Martin's employment during the marriage was interrupted by work related injuries and periods of disability. In 2000, she began suffering from intermittent lower back problems that required time off. She was off work for the better part of two years and Costco eventually let her go in 2002. She received short-term and then long-term disability payments from insurance and eventually qualified for Social Security disability. During the period she was unable to work outside the home, Ms. Martin operated an in-home business preparing scrapbooks and photo albums that never earned a significant net income.

Between 2000 and 2006, Ms. Martin received treatment that enabled her to return to work full time for Costco in June 2008. Thereafter, though, she twice suffered work injuries. The pain from her injuries was quite severe and included acute symptoms and migraines. Her primary physician imposed work restrictions.

Mr. Welton petitioned for dissolution of the marriage in March 2009 and the couple separated on March 29, when Ms. Martin was served with the petition. She filed a pro se response to the petition two weeks later. In September 2009, with no lawyer having appeared for Ms. Martin, Mr. Welton filed a note for trial setting and the case was set for a two-day trial in December. On October 29, the parties entered into a stipulation

to continue trial to early May of the following year. The agreed continuance order was signed by Chelan County Superior Court Judge Ted Small.

Ms. Martin engaged a lawyer thereafter, and brought a motion for temporary orders. Within the week before it was to be heard, Mr. Welton filed a motion and affidavit of prejudice against Judge Small. The court (through a different judge, the Honorable John Bridges) denied the motion as untimely because Judge Small had exercised discretion by signing the continuance order. On the morning before the afternoon hearing on the motion for temporary orders, Mr. Welton's lawyer was notified of the dismissal of the motion and affidavit and filed a memorandum contesting the conclusion that the affidavit was untimely.

Judge Small presided at the afternoon hearing, heard argument on the affidavit issue, and rejected Mr. Welton's argument that his affidavit of prejudice was timely.

A three-day trial took place before Judge Small in December 2011 and January 2012. At the time of trial Mr. Welton was receiving a salary of $2,000 a month from the LLC. The parties stipulated that Mr. Welton's minority interest in the LLC was worth $1,095,870. Ms. Martin was receiving a total of approximately $2,600 a month at the time of trial, between part-time earnings and disability payments. She had been attending school online and by the conclusion of trial had received her associate of arts degree. She hoped to complete her bachelor's degree.

4

Judge Small divided the parties' modest community assets, allocating approximately $20,000 more in value to Ms. Martin than to Mr. Welton. To achieve a 50-50 split of the community assets, a $10,000 payment by Ms. Martin would have been required.

On the more substantial issues of whether Ms. Martin should be awarded a portion of the almost $1.1 million value of Mr. Welton's interest in the LLC or whether an equitable lien should be imposed, the court found in Ms. Martin's favor on both—but because the LLC's operating agreement did not allow transfer of membership interests, the court imposed an equitable lien. Having concluded that the value of Mr. Welton's interest in the LLC had increased during the marriage by an amount "between $305,07[4] and $413,694," it arrived at a figure of $360,000 as the measure of the increase. Clerk's Papers (CP) at 167. On that basis, it imposed an equitable lien of $175,000 after taking into consideration the $10,000 equalizing payment from Ms. Martin to Mr. Welton required to balance out the parties' shares of the community assets.

As to maintenance, Judge Small found that while Ms. Martin had proved a need for maintenance, she had not proved Mr. Welton's "current ability" to pay it, in light of his parents' control of the LLC and underpayment of their son. Clerk's Papers (CP) at 168. He awarded Ms. Martin $10,000 in attorney fees. The final judgment entered in favor of Ms. Martin was $195,115.58 after taking into consideration pre- and postjudgment interest and attorney fees.

5

The court made a number of findings (some labeled conclusions) that during the dissolution proceeding Mr. Welton had failed or refused to pay amounts to Ms. Martin that he had been court ordered to pay. It also found that he had exerted little if any effort to allow access to the LLC property and financial records for Ms. Martin's appraiser and accountant to review and that his parents had not been forthcoming with financial records of the LLC.

Mr. Welton appeals and Ms. Martin cross appeals.

## ANALYSIS

### I. Affidavit of Prejudice

Mr. Welton first challenges the trial court's refusal to honor his motion for change of judge and affidavit of prejudice. RCW 4.12.040 and 4.12.050 extend to parties a right to one change of judge upon the timely filing of a motion supported by an affidavit of prejudice. A motion and affidavit of prejudice are timely filed if called to the court's attention "before the judge presiding has made any order or ruling involving discretion." RCW 4.12.050. The parties dispute whether the court exercised discretion when it signed the stipulated order for a continuance.

Ms. Martin places substantial reliance on the Washington Supreme Court's decision in *In re Recall of Lindquist*, 172 Wn.2d 120, 258 P.3d 9 (2011) as demonstrating that a continuance is a discretionary ruling. *Lindquist* involved a petition for the recall of the county prosecuting attorney under RCW 29A.56.270. At a prehearing telephone

conference, "Lindquist's attorney 'made an oral motion that . . . the court . . . continue the hearing until the 19th of November, when Respondent [Lindquist]' would be available to attend." *Lindquist*, 172 Wn.2d at 126 (most alterations in original). A continuance would have delayed the hearing beyond the statutory time limit set forth in RCW 29A.56.270. The trial judge denied the motion. The petitioners later filed an affidavit of prejudice requesting assignment to a different judge. The trial court dismissed the affidavit of prejudice because it was not accompanied by a signed motion and was untimely because it had been filed after "'discretionary rulings includ[ing] . . . denial of Respondent's motion for continuance.'" *Lindquist*, 172 Wn.2d at 127 (alterations in original).

On review, the Supreme Court found both grounds for dismissal of the affidavit of prejudice to be valid. The petitioners had argued that continuance of the recall hearing was not discretionary because the hearing date was mandated by statute. The Supreme Court disagreed, observing that the procedures set forth in the recall statute are regarded as mandatory only if they affect the actual merits of an election. Since the timing of the hearing did not affect the merits, the trial court enjoyed discretion to set a different hearing date, and exercised its discretion in declining to do so.

Mr. Welton relies on the Supreme Court's decisions in *State v. Parra*, 122 Wn.2d 590, 859 P.2d 1231 (1993) and *State ex rel. Floe v. Studebaker*, 17 Wn.2d 8, 134 P.2d 718 (1943). In *Parra*, the parties presented the trial court with an omnibus order

7

resolving 23 potential defense motions and 20 potential motions by the State. Neither party objected to the other's motions. The trial court signed the order and sometime thereafter the defendant filed a motion and affidavit of prejudice. On appeal, the Supreme Court found that the trial judge's ruling on the omnibus order was a discretionary act. *Parra*, 122 Wn.2d at 594. In doing so, it distinguished *Floe*, in which a stipulated order consolidating two actions for trial had been held not to invoke the court's discretion. *Floe*, 17 Wn.2d at 16-17.

The *Parra* court distinguished the agreement reached in *Floe* from the omnibus order in *Parra* because "by bringing their respective issues before the judge in the form of motions, the parties [in *Parra*] were submitting those matters to the court for resolution." *Parra*, 122 Wn.2d at 594. It observed that generally, the trial court does not exercise discretion for purposes of an affidavit of prejudice when entering agreed orders or stipulations on "matters relating merely to the conduct of a pending proceeding, or to the designation of the issues involved, affecting only the rights or convenience of the parties, not involving any interference with the duties and functions of the court." *Id.* at 603.

In the criminal context, the grant of a stipulated continuance is regularly regarded as a discretionary ruling. *E.g., State v. Dennison*, 115 Wn.2d 609, 620 n.10, 801 P.2d 193 (1990). But the criminal rules explicitly treat it as such. CrR 3.3(f)(1) (formerly CrR 3.3(h)) provides that "the court *may* continue the trial date to a specified date" upon

8

written agreement of the parties, signed by the defendant or defendants. (Emphasis added.) In *State v. Guajardo*, 50 Wn. App. 16, 19, 746 P.2d 1231 (1987), the court explained that the signing of a stipulated continuance is a discretionary ruling because the court "must consider various factors, such as diligence, materiality, due process, a need for an orderly procedure, and the possible impact of the result on the trial."

Although there is no equivalent civil rule, most of the same factors must be considered in the civil context, in which trial courts are concerned with the timely disposition of cases and the court's own calendar, even if civil cases do not present the same issues of due process. Mr. Welton's and Ms. Martin's stipulated continuance made clear that they had agreed to a later trial date but the scheduling of trial is not, to quote *Parra*, an issue "affecting only the rights or convenience of the parties, not involving any interference with the duties and functions of the court."

Because Judge Small exercised his discretion in determining whether to sign the continuance order or hold the parties to the existing schedule, the trial court did not err in finding that Mr. Welton's affidavit was untimely. We need not reach Ms. Martin's alternative argument that the parties had agreed to trial before Judge Small as part of their stipulation to continue trial.

II. Division of Property

Mr. Welton next challenges the $175,000 equitable lien awarded Ms. Martin, arguing that it was unsupported by evidence demonstrating an increase in the value of his LLC interest or that he was undercompensated.

In a marriage dissolution action, the trial court must make a "just and equitable" distribution of the parties' property. RCW 26.09.080. The statute provides the trial court broad discretion in awarding property and this court will reverse only upon the appellant's showing of a manifest abuse of discretion. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). This deferential standard of review exists because the trial court is "in the best position to assess the assets and liabilities of the parties" in order to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999).

The trial court found that "[t]he primary issue in this case is whether it is a fair and equitable distribution to award the petitioner all of his interest in the L.L.C., or whether the respondent should receive a judgment amount and/or equitable lien against the petitioner[/husband]'s interest in the L.L.C." CP at 166. Mr. Welton recognizes that "[c]ompeting community property principles come into play when a spouse performs services to benefit separate property" and that a growth in value of separate property attributable to services that the community has a right to claim can be subject to a right of reimbursement protected by an equitable lien. Br. of Appellant at 23.

10

When awarding an equitable lien against separate property to account for the labor of a spouse, which is a community property contribution, the court may determine the value of the community contribution by either determining a reasonable wage or assessing the resulting increase in value. *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 869, 855 P.2d 1210 (1993) (citing Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13 (1986)).

Here, the trial court determined that Mr. Welton had not received a reasonable wage *and* that the value of the property had increased. Mr. Welton argues that these determinations were not supported by evidence of a beginning-of-marriage value for his 33 percent interest in the LLC or the amount of salary and benefits received by operations managers of comparable orchard and CA warehouse operations.

The trial court's unchallenged findings are verities on appeal, *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011), and most of the findings we discuss hereafter are unchallenged. Where findings are challenged, we review them for substantial evidence. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Whether the findings of fact support the trial court's conclusions of law is reviewed de novo. *In re Marriage of Herridge*, 169 Wn. App. 290, 297, 279 P.3d 956 (2012). We review a trial court's decision to grant an equitable lien for an abuse of discretion. *In re Marriage of Marshall*, 86 Wn. App. 878, 882, 940 P.2d 283 (1997).

A. Increase in the Value of the LLC Interest

The LLC's value at the conclusion of the marriage was addressed by Ms. Martin's expert, Rick Linder, who expressed his opinion that 33 percent of the fair market value of the LLC's assets as of the year-end 2010 was $1,826,450. After applying a 40 percent discount for the fact that Mr. Welton's interest was an unmarketable minority interest, Mr. Linder valued the interest at $1,095,870. Mr. Welton stipulated to that value. Among the LLC's assets valued by Mr. Linder were property, buildings and equipment worth over $6 million, and "other investments" reported on schedule L to the partnership tax return worth $487,599. Ex. 10.

As to the increase in value during the marriage, Mr. Welton does not challenge the trial court's findings that relatively early in the marriage, in 2000, one of the warehouse tenants failed to pay rent, the LLC was forced to refinance to stay in business, and Ms. Martin signed a disclaimer of her interest in the LLC's property due to her concern about the prospect of a business bankruptcy. Mr. Welton does not challenge the court's findings that the LLC members' capital accounts totaled <-$239,182> and <-$347,088> at the beginning and end, respectively, of 2003 and by 2009 had increased to $266,769 and $274,139 at beginning and year-end. He does not challenge the finding that during the marriage the "other investments" reflected on schedule L of the partnership tax return grew from nothing before 2007 to $305,083 by the beginning of 2009 and $487,599 by

12

the end of 2010, and that, in addition, the LLC purchased two parcels of real property during the marriage and before separation for a total cost of $336,000.

Mr. Welton nonetheless argues that this evidence of a substantial increased value fails to support the equitable lien because Ms. Martin failed to present evidence of the value of his interest in the LLC at the inception of the marriage. He cites no authority for the proposition that in order to find a right of reimbursement supporting an equitable lien the increase in value of separate property must be measured from the inception of the marriage. Here, there is evidence that financial reverses took the LLC to the brink of bankruptcy three years into the marriage, that it recovered, and that in the remaining nine years of the marriage the value of Mr. Welton's interest grew to a stipulated value (after a substantial marketability discount) of approximately $1.1 million. If a separately owned business struggles but then recovers and thrives at any point during the marriage, the increase in its value may be traceable to a community contribution.

Mr. Welton next argues that even if the value of his interest *did* increase by hundreds of thousands of dollars, Ms. Martin failed to present evidence that the increase was due to his efforts.

There is a presumption that any increase in the value of separate property is separate in nature, but the presumption can be rebutted by direct and positive evidence that the increase is attributable to community funds or labors. *In re Marriage of Elam*, 97 Wn.2d 811, 816, 650 P.2d 213 (1982). The community is also entitled to a share of the

13

increase in value due to inflation in proportion to the value of community contributions to the property. *Id.* at 816-17. If evidence is presented that the increased value of separate property is attributable to community labor, then the spouse with the separate ownership interest may counter with evidence that the increase in value is attributable not to community contributions or labor, but to rents, issues and profits or other qualities inherent in the business. *In re Marriage of Lindemann*, 92 Wn. App. 64, 69-70, 960 P.2d 966 (1998).

Mr. Welton does not challenge the trial court's findings that in 1999 his mother stopped working for the LLC other than to do payroll and his father also cut back, occasionally working in the warehouse and helping during harvest. It is undisputed that Mr. Welton's job duties increased as he took up the slack in the warehouse and took over equipment maintenance in addition to his duties of running the orchard, and that as operations manager for the LLC he was responsible for supervising all of the LLC's employees (including as many as 50 during harvest) and was on call 24 hours a day, 7 days a week, working 12 to 16 hours a day at peak times, including the weekends. Evidence that the increase in the LLC's value occurred during a period when Mr. Welton was managing the orchard and warehouse operations, working long hours, and was the member most actively involved in the business is direct and positive evidence of a community contribution to the increase.

Mr. Welton was entitled to defend against this evidence with any proof that the increase in value was attributable to other factors. He made some attempt to do so, offering evidence of capital infusions by his parents, but the trial court was not persuaded. We defer to the fact finder on issues of witness credibility and the persuasiveness of the evidence. *Akon*, 160 Wn. App. at 57.

The court ultimately found that "the separate estate of the petitioner/husband grew in an amount between $305,07[4] and $413,694" during the marriage, finding the increase to be $360,000. CP at 167. Substantial evidence supports the trial court's findings.

### B. Undercompensation During Marriage

As an alternative basis for imposing the equitable lien, the trial court found that the draws that Mr. Welton received from the LLC were unreasonable considering the amount of time and effort that he spent running its operations. Mr. Welton challenges this finding on the basis that Ms. Martin failed to present evidence of the salary received by managers of comparable orchard and warehouse operations. He also argues that the trial court erred in awarding Ms. Martin the equitable lien amount of $175,000 without applying an offset equal to the rent free double-wide home and other benefits he received as a member-employee of the LLC.

Addressing the latter contention first, a trial court may offset the community's right to reimbursement against a reciprocal benefit received by the community for its use

15

of individually owned property. *Connell v. Francisco*, 127 Wn.2d 339, 351, 898 P.2d 831 (1995); *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984). Whether to do so is discretionary; there is no requirement that a court offset the lien if it will result in a distribution that is not fair and equitable.

In this case the trial court specifically concluded that "[w]hile the community did receive an offsetting benefit of living on the L.L.C.'s property rent and utility free, this benefit is not enough when one considers the same benefit was provided to at least one employee and the separate estate of the petitioner/husband grew in an amount between $305,70[4] and $413,694." CP at 167. The court therefore arrived at the lien amount with Mr. Welton's employment benefits in mind. In any event, it was not required to reduce the equitable lien by the benefit and Mr. Welton fails to demonstrate how it abused its discretion by declining to reduce the lien.

Turning to proof of undercompensation, Ms. Martin presented evidence that Mr. Welton took monthly draws during some periods that were only $100 to $1,100 per month more than another full-time employee who Mr. Welton supervised and who also received free housing. The trial court could and did find from this evidence that the draws taken by Mr. Welton were unreasonable considering the time and effort he spent and responsibility he bore for operations of the LLC. Neither party presented evidence of fair market salaries for comparable orchard and warehouse management services, however, so here, as in *Pearson-Maines*, 70 Wn. App. at 869, the trial court lacked

16

sufficient evidence to measure the lien by a reasonable wage. The increase in value of the LLC was therefore the better measure. *See id.* Ms. Martin presented evidence that Mr. Welton took draws that were only a fraction of his share of available net rental income,[1] but evidence that he was being undercompensated by some amount and leaving substantial net rental income in the LLC—while further establishing the community contribution to the growing value of his interest in the LLC—still does not provide a reliable wage amount.

Finally, as Ms. Martin points out, the trial court could also have awarded Ms. Martin a portion of Mr. Welton's interest in the LLC if necessary to achieve a just and equitable distribution. *See In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985); RCW 26.09.080 (providing that the court is to "make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable). The only requirement is that the court keep the separate property character in mind. *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977).

---

[1] While Mr. Welton challenges the trial court's findings that there were years when Mr. Welton took draws of only a half to a third of his share of the partnership's net rental income, those findings are largely, if not entirely, supported by the partnership tax returns admitted in evidence. Schedules E and K-1 to the 2009 return show that the LLC's net rental income was $345,361 (rather than $392,648), that Mr. Welton's share was correctly found by the court to be $129,574, and that the court correctly found that he took draws of only $42,768 that year. The same schedules to the 2010 return show that the trial court correctly found the LLC's net rental income to be $250,452 and that Mr. Welton's share was $82,649, but that he took draws of $32,570 (rather than $42,570) that year.

If we were not satisfied that the trial court's imposition of the equitable lien was supported by proof of a $175,000 right of reimbursement, we would affirm on the basis that the trial court's distribution was, on the whole, fair, just, and equitable. *In re Marriage of Brady*, 50 Wn. App. 728, 731-32, 750 P.2d 654 (1988) (affirming distribution as fair, just, and equitable despite shortcomings in evidence of the source of the separate property's increased value); *cf. In re Marriage of Pilant*, 42 Wn. App. 173, 709 P.2d 1241 (1985) (affirming fair and equitable distribution notwithstanding erroneous valuation).

### III. Attorney Fee Award

Mr. Welton's remaining challenge is to the trial court's award to Ms. Martin of $10,000 in attorney fees. Mr. Welton contends there was no evidence he could afford to pay, pointing to the trial court's explanation that it was denying Ms. Martin spousal maintenance because Mr. Welton is underpaid, his parents control what draws he receives, and Ms. Martin "failed to prove that [he] has a current ability to pay maintenance." CP at 168. Under RCW 26.09.140, the trial court may award attorney fees "after considering the financial resources of both parties." The trial court must balance the needs of the requesting party against the other party's ability to pay. *In re Custody of Brown*, 153 Wn.2d 646, 656, 105 P.3d 991 (2005).

The determination of attorney fees is a matter left to the discretion of the trial judge. *Ausler v. Ramsey*, 73 Wn. App. 231, 234, 868 P.2d 877 (1994). We review a trial

18

court's decision to grant or deny a statutory attorney fee award for abuse of discretion. *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *In re Marriage of Farmer*, 172 Wn.2d 616, 625, 259 P.3d 256 (2011).

The evidence before the court demonstrated that the LLC had paid Mr. Welton's lawyer in excess of $70,000 over the same period in which Mr. Welton failed to pay fees incurred by Ms. Martin that he had been court ordered to pay. Mr. Welton and his mother testified that this preferential payment of his lawyer's fees was through a loan from the LLC. But there was only one promissory note, for $29,674.84, and no loan in any amount appeared on the LLC's financial statements admitted into evidence. No payments had been made on the note. The court found that "[g]iven the closely held nature of the corporation and the unwillingness to be forthcoming with complete financial statements, it is unlikely [Mr. Welton] will have to pay his attorneys' fees at all." CP at 168.

While the LLC's coffers were open to compensate Mr. Welton's lawyer, the court found that Ms. Martin had been required to sell the couple's double-wide home in order to obtain the funds she needed to retain an accountant and lawyer.

There may be a superficial inconsistency between the trial court's finding that Mr. Welton did not have a current ability to pay spousal maintenance and its order that he pay an additional $10,000 toward Ms. Martin's attorney fees, to be included in her judgment.

19

There is a rational distinction when the findings and conclusions are considered as a whole. Mr. Welton clearly had the financial ability to pay $10,000 toward Ms. Martin's fees even though his parents, with or without his collusion, might delay his doing so. Monthly maintenance, on the other hand, was likely to present an ongoing battle. A rational court could award attorney fees to Ms. Martin after engaging in the balancing required by RCW 26.09.140 while at the same time deciding to accomplish a just and equitable settlement without ordering spousal maintenance.

### IV. Attorney Fees on Appeal

Ms. Martin asks that we award her attorney fees on appeal under RCW 26.09.140, or alternatively on the basis of what she characterizes as the frivolous nature of Mr. Welton's appeal and his intransigence. A party may request fees on appeal if applicable law grants him or her the right to recover reasonable attorney fees on review. Ms. Martin has not served and filed the financial affidavit required by RAP 18.1(c) to recover fees under RCW 26.09.140.

RAP 18.9(a) provides for the imposition of sanctions where a party brings a frivolous appeal. An appeal is frivolous if we are convinced that it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). A civil appellant has a right to appeal under RAP 2.2, and all doubts as to

whether the appeal is frivolous should be resolved in favor of the appellant. *See Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).

Intransigence is a basis for awarding fees on appeal separate from RAP 18.9 and RCW 26.09.140. *In re Marriage of Mattson*, 95 Wn. App. 592, 605, 976 P.2d 157 (1999). It includes obstruction and foot dragging, filing repeated unnecessary motions, or making a proceeding unduly difficult and costly. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 30, 144 P.3d 306 (2006).

While the trial court found intransigence on Mr. Welton's part during proceedings below, he has not exhibited such behavior in the conduct of the appeal. Nor do we find his appeal frivolous. We deny the request for fees.

## CROSS APPEAL

Ms. Martin cross appeals, assigning error to the trial court's failure to award her the $300,000 she requested at the close of trial. She asks that we remand for entry of an equalizing judgment in her favor, together with a charging order against the LLC for $300,000.

RCW 26.09.080 requires consideration of four factors in reaching a just and equitable property division: the nature and extent of (1) the community property and (2) the separate property of the parties, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). As earlier discussed, the

21

No. 31073-6-III
*In re Marriage of Welton*

standard of review is deferential in light of the superior ability of the trial court to determine an equitable outcome.

The final disposition of property was an award to Mr. Welton of his separate property interest in the LLC subject to an equitable lien, for a net value of $1,022,000. Ms. Martin was awarded $180,786.56. Taking into consideration the limited community property, the uncontested separate character of Mr. Welton's interest in the LLC and the trial court's findings as to the range of increase in its value during the marriage, the 12-year duration of the marriage, and the economic circumstances of the parties at the time of the property division, we cannot say that the trial court abused its discretion.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Korsmo, J.

22